CHARITY VANCE *versus* ROBERT VANCE.

In the St. 1821, c. 40, "concerning dower," the word *jointure* was used
in its well known and established legal sense; and must be a freehold es-
tate in lands or tenements, secured to the wife, to take effect on the de-
cease of the husband, and to continue during her life at the least, unless she
be herself the cause of its determination,

But by that statute no jointure can prevent the widow from having her dower,
unless made before marriage, and with the consent of the intended wife.

A legal jointure cannot be composed partly of a freehold, and partly of an
annuity not secured on real estate.

Marriage is a good consideration for ante-nuptial contracts, and they are
binding upon the parties, when fairly made, although there be no trustee
or third party named in them.

There can be no estoppel by executory covenants not to claim a right which is
first to accrue afterwards.

It is only where there is a warranty of title, that covenants can operate to bar
. or rebut a future right not then in existence.

The covenants of the wife with her husband, before the marriage, that she
will not claim dower in his estate, cannot operate by way of release, estop-
pel, or rebutter, to bar her of her dower,

If the widow, after the decease of her husband, refuse to receive the pro-
vision made for her as the consideration of her covenants, this, too, would
prevent the covenants from depriving her of her dower.

THE demandant, in her writ, claimed dower in the premises,
as the widow of William Vance, deceased. She proved the
marriage, seisin of the husband during the coverture and until
his death, and a demand of dower of the defendant, as tenant
of the freehold.

.The tenant then read in evidence an indenture between the
demandant and the said ·William Vance, of which a copy of
the material parts follows.

"This indenture of two parts, made the fourth day of
August, in the year of our Lord one thousand eight hundred
and thirty-two, by and between William Vance of Readfield,
in the county of Kennebec, Esquire, of the first part, and
Charity Stafford of said Readfield, single woman, of the se-
cond part, witnesseth, that for and in consideration of a mar-
riage intended to be shortly had and solemnized between the
said William Vance and the said Charity Stafford, and the sum ·

of one dollar to be had and received by the said William Vance, as a marriage portion with the said Charity Stafford, and for that a competent jointure may be had, made and provided for the said Charity Stafford in case the said marriage shall take effect, and for the settling and assuring the lands or tenements hereinafter mentioned, and other pecuniary compensation, to and for the use of her the said Charity Stafford, agreeably to the terms and for the purposes hereinafter mentioned, limited and declared, pursuant to the agreement made upon the contract of the said intended marriage, he, the said William Vance, hath granted, bargained, alienated, and confirmed, and by these presents doth grant, bargain, alienate and confirm unto the said Charity Stafford, to have and to hold in her actual possession, a certain piece or parcel of land, with a dwellinghouse thereon, situated in said Readfield, (described.) To have and to hold the said demised premises with their appurtenances to her, the said Charity Stafford, and assigns, for their use and benefit as hereinafter mentioned, limited, expressed and declared, that is to say, to remain for the use and behoof of the said Vance and his heirs until the said marriage between him and the said Charity Stafford, his intended wife, shall be had and solemnized, and from and after the solemnization thereof, to the use and behoof of the said Charity and her assigns, for and during the natural life of him, the said William Vance, and afterwards so long as she shall remain his widow, single or unmarried, only reserving to the said Vance the privilege during his natural life, in trust for her and for her use and benefit, to preserve and support the same and to prevent waste or destruction thereof, and to make such additions and improvements on the same, for the benefit of the said Charity, as he may think proper, all of which is to be for her use and benefit so long as she remains his widow, single or unmarried, and no longer. And also the said Vance has agreed and doth hereby agree that the said Charity shall have paid her out of his estate, by his heirs, executors or administrators, the sum of one hundred dollars a year, from and after his decease, to be paid in semi-annual payments, so long as she shall remain his

widow, single and unmarried. The aforesaid rents, tenements, and sums of money to be for her jointure and in full satisfaction of her dower or thirds which she may claim or have in any lands, tenements, or hereditaments whereof or wherein he, the said William Vance, shall at any time during his life be seised or possessed of; and the said Charity on her part, in consideration of the jointure aforesaid and a bond bearing even date with this instrument, made and delivered to her by the said Vance in the penal sum of ten thousand dollars, conditioned for the quiet enjoyment of the aforesaid premises and the payment of the one hundred dollars a year, to be paid in semi-annual payments for the term aforesaid, hereby agrees and solemnly obligates herself never to demand, or receive, nor suffer any one for her or in her name, to demand or receive, any dower or thirds in any property, lands, tenements, or hereditaments which the said Vance may be seised or possessed of during · his lifetime or die seised or possessed of. In witness whereof the parties aforesaid have hereunto interchangeably set their hands and seals, this day and year last aforesaid."

This instrument was signed and sealed by the parties, was witnessed, and delivered to the said Charity Stafford a few days before their marriage.

On August 18, 1841, the administrator of the estate of William Vance offered to the plaintiff performance of the said indenture, and notified her that the house named therein was ready for her, but no money was produced. She replied, that she would have nothing to do with it.

The counsel for the defendant contended, that the instrument made provision for the plaintiff in the nature of a jointure; or if not, that it contained covenants, grounded on a valuable consideration, which barred her of dower in the estate of said William Vance.

WHITMAN C. J. intimated a different opinion, and the defendant consented to be defaulted, reserving liberty to move to have the default taken off, in case the whole Court should be of opinion, that the indenture did provide for her a join-

Vance v. Vance.

ture, or contain covenants, which would bar the plaintiff of her claim to dower.

*Bradbury* and *Morrill* argued for the tenant, and contended, that the demandant was not entitled to recover, because she had barred herself of dower according to the well settled and established rules of law.

She was barred by the jointure secured to her by her expected husband, and accepted by her, shortly before the marriage. The jointure is good, and comes within the definitions found in the best authorities. Co. Lit. 36, b; Vernon's case, 4 Coke's R. 1; Moore, 103; Leon. 311; Bac. Abr. Jointure, B; *M' Cartee* v. *Teller*, 2 Paige, 511; Same case, 8 Wend. 267. An estate for life unless she determines it by her own act, is a good jointure. Same authorities, and 1 Cruise, Dower, c. 5, § 20; Jointure, c. 1; 2 Bl. Com. 124; Bracton, 202; *Hastings* v. *Dickinson*, 7 Mass. R. 153; *Gibson* v. *Gibson*, 15 Mass. R. 106. There is no distinction between an estate for life and during her widowhood. They are alike a bar to dower. 4 Dane, 683; *M' Cartee* v. *Teller*, 8 Wend. 267. When the jointure is granted and accepted before marriage, as in this case, no acceptance after the death of the husband is necessary. Acceptance afterwards is necessary only when the jointure is granted during the coverture. A jointure made and accepted before marriage could not be waived and dower claimed after the death of the husband. Co. Lit. Tit. 5, § 41. Our statutes have not changed the law in this respect, as it was before their enactments, since the St. 27 Hen. 8, c. 10, § 8.

But if the demandant is not barred of her dower by the provision made and accepted as a jointure, she is effectually estopped and barred by her covenants in the indenture between herself and her late husband before the marriage. If she recovers her dower, the representative of her late husband, will be thereby entitled to recover of her the amount of the damage sustained by such recovery. This operates as a bar and rebutter to all claim in this suit. *Gibson* v. *Gibson*, 15 Mass. R. 106.

*Wells* argued for the demandant, and insisted, that the de-fence set up was wholly insufficient to preclude the plaintiff from maintaining her action.

Our statute in force at that time on this subject, St. 1821, c. 40, provides that she may be barred of dower only "where such widow, by her own consent, may have been provided for by way of jointure, prior to the marriage." To bar her of her dower, it must be a bar to dower at common law, modified by the St. 27 Hen. viii, c. 10. The smallest estate which can operate as a bar to dower by way of jointure, is a life estate. Co. Lit. 36 ; 2 Bl. Com. 133. *Hastings* v. *Dickinson*, 7 Mass. R. 153. And the estate must not be fettered with any conditions. 1 Roll. Abr. 652 ; Co. Lit. 36. Here a very im-portant condition was imposed. If one condition may be imposed, another may be, and thus the object of the law be entirely destroyed. It is said, that it is sufficient, if the estate is for life, unless she determines it by her own act. This qual-ification does not apply to the nature of the estate granted as a jointure. That must be for life at least. It applies only to some after act of her own, as by joining in an alienation of the estate by fine and recovery in England, or by deed with her husband here. Co. Lit. 36. There was no *acceptance* in this case to bar the demandant. An acceptance, to have that effect, must be after the right of dower has accrued. To make an estate during widowhood a bar of dower, she must accept such estate after her right to dower has actually accrued by the death of the husband. 4 Kent, 55, 56, and cases cited. And this is laid down as law in the cases cited for the tenant in 2 Paige, 511, and 8 Wend. 267. And the jointure must be a fair equivalent for dower, both at law and in equity. 4 Kent, 56 ; Co. Lit. 37.

The demandant is not estopped from recovering her dower by any covenants in the indenture.

No right can be released, until it has accrued. This inden-ture was made before marriage, and she had no contingent, or possible claim to dower in this estate. If this is an estoppel, then any agreement under seal must also be an estoppel. It is

the contract of marriage made afterwards, which gives the claim to dower.

But had this been such jointure as would have barred the demandant of dower, at its inception, it could have no such effect now. Where the consideration, or any portion of it fails, the right of dower accrues. *Hastings* v. *Dickinson*, 7 Mass. R. 153; *Gibson* v. *Gibson*, 15 Mass. R. 106. The demandant has received nothing, although the time of payment had long been past before dower was demanded. A mere offer to pay, without the production of any money, is not a tender.

The opinion of the majority of the Court, TENNEY J. giving no opinion, was prepared by

SHEPLEY J. — The statute of 1821, c. 40, § 6, provides, that the widow may claim dower in lands, tenements and hereditaments, of which the husband was seised in fee, either in possession, reversion or remainder, at any time during the marriage, except where such widow by her own consent may have been provided for by way of jointure prior to the marriage; or where she may have relinquished her right of dower by deed under her hand and seal. The word jointure must have been used in its well known and established legal sense. As introduced by the statute of 27 Hen. 8, c. 10, § 6, the definition of a legal jointure was given by Coke, and the requirements to constitute one stated, in his commentary on that statute. Co. Lit. 36, b. It must be a freehold estate in lands or tenements secured to the wife, and to take effect on the decease of the husband, and to continue during her life at the least, unless she be herself the cause of its determination. As early as 1647, it was ordained by a colonial regulation, that every married woman, " that shall not before marriage be estated by way of jointure in some houses, lands, tenements or other hereditaments for term of life," shall have her dower. There does not appear to have been any modification or repeal of that ordinance in the revision of the statutes in Massachusetts in the year 1799. And the statute of 27 Hen. 8, c. 10, with

the definitions and constructions appended to it by text writers and decided cases, and as modified by this ordinance, must be regarded as the foundation of the enactment in the statute of this State. It is true, that there are important differences in the law of jointure between the English statute and that of this State. By the former a jointure made in conformity to its provisions would not be binding on the widow, without her consent, if made before marriage; and also if made after marriage and assented to by the widow, after the death of her husband. But by the latter, no jointure could prevent the widow from claiming her dower, unless made before marriage and with the consent of the intended wife. There is however no authority in either of them for considering, that a legal jointure can be composed partly of a freehold estate and partly of an annuity not secured on any estate. It may be true, that the estate secured to the widow in this case by the ante-nuptial agreement or deed of the fourth of August, 1832, although limited *durante viduitate,* would have constituted a good jointure within the statute of this state, if the widow before her marriage had consented to receive it as such. But it is not necessary to decide this point; for it is not the estate alone, that she consents to receive as a jointure, and in satisfaction of dower. The deed recites, that " the aforesaid rents tenements, and sums of money to be for her jointure and in full satisfaction of her dower;" and she covenants in consideration of the jointure aforesaid, composed of the estate and annuity together, never to demand her dower. And the Court cannot say, that she was provided for by way of jointure, that is, by an estate for life in lands or tenements, by her own consent before marriage.

It is contended, that if the widow be not barred of her dower by the estate conveyed as a jointure, she is by her covenants in the deed. Marriage is a good consideration for ante-nuptial contracts, and they are binding upon the parties, when fairly made, although there be no trustee or third party named in them. *Wood* v. *Jackson,* 8 Wend. 9. *Roane's Ex.* v. *Hern,* 1 Wash. C. C. R. 47. The widow in consider-

ation of the estate and of a bond providing for the payment of an annuity of one hundred dollars a year, "agrees and solemnly obligates herself never to demand or receive, nor suffer any one for her or in her name to demand or receive, any dower or thirds in any property, lands, tenements, or hereditaments, which the said Vance may be seised or possessed of during his lifetime, or die seised or possessed of." The history of the law shows the occasion of the enactment of the statute of 27 Hen. 8, c. 10, and exhibits the legal difficulties, which prevented the wife from barring herself of dower by any acts of her own. These were, that no right could be barred until it had accrued. That no right to an estate of freehold could be barred by a collateral satisfaction. That a release before marriage could not be effectual, because at the time of making it, she had no title to dower, and the release could not bar a right, which accrued afterward. And during the marriage she had no legal capacity to execute one. The covenants cannot therefore at law be pleaded as a release, for the release itself would not be effectual. And it was so decided in *Hastings* v. *Dickinson*, 7 Mass. R. 153. An attempt was afterward made to make them effectual by way of estoppel; but the Court decided, that there could be no estoppel by an executory covenant. *Gibson* v. *Gibson*, 15 Mass. R. 106. And in that case the Court say, they have considered, whether the covenants might avail by way of rebutter, and conclude, that they were not extinguished by the marriage; but that they could not so operate in that case, if there had been a failure of consideration. In this case there is no failure of consideration. If the widow has not received the benefit of the consideration for her covenants, it is because she chose not to receive it. But it is only where there is a warranty of title, that covenants can operate to rebut or bar a future right not then in existence. Co. Lit. 265. *McCrachen* v. *Wright*, 14 Johns. R. 193. There is however another difficulty in considering the covenants as a bar. The widow has rejected the provision in the deed, and has neither taken the profits of the estate, nor received the annuity. The estate of her late husband has had

the benefit of this rejection; and has in effect received, by not being obliged to part with them, the income of the estate and the amount of the annuity; which must be taken into consideration in estimating the damages, which may be claimed for a breach of the covenants. It was said in the case of *Gibson* v. *Gibson,* that at most, the widow would be liable only in an action on the covenants for the difference between the value of the dower and the provision made for her by the deed. And it cannot be justly claimed, that she should lose the income of the estate and the annuity, and still be deprived of her dower, by allowing the covenants to be pleaded by way of rebutter.

*Judgment for demandant.*