HON. JAMES BARRETT,
HON. HOMER E. ROYCE,
HON. TIMOTHY P. REDFIELD,
HON. JONATHAN ROSS,
HON. H. HENRY POWERS,
HON. WHEELOCK G. VEAZEY,

ASSISTANT JUDGES.

---

### DIANA B. MANN *v.* GIDEON MANN'S ESTATE.

*Homestead. Ante-nuptial Contract. Powers of Probate Court. Specific Performance. Release of Homestead.*

The plaintiff and the intestate entered into an ante-nuptial agreement, in writing and under seal, by which she released all right to dower and homestead in his estate, on consideration of marriage, and the payment of $50 per year during his natural life, if she outlived him, but $50 per year during her natural life, if he outlived her. They were subsequently married; but it did not appear that the husband performed his part of the contract as to paying *Held*, that the widow was entitled to a homestead; because,

1. The homestead by force of the statute vests in the widow, on the death of the husband; and the contract, being a release or discharge of something not in existence at the time it was given, cannot defeat this right.*

---

* See Am. Law Register, Oct. 1869, 608, where is discussed the effect of a mortgage of property, *not in existence*, which is not a mere *accretion* to property in the actual or legal possession of the mortgagor at the time the mortgage is given. *Collins* v. *Myers*, 16 Ohio, 547; *Davis* v. *Ransom*, 18 Ill. 401.—REP.

2. The ante-nuptial covenant, not to claim a homestead, was executory, and could only be enforced by a court of general equity powers.

3. The estate, in effect, contends that the Probate Court may decree that the plaintiff shall specifically perform her covenant not to claim a homestead. This is entirely beyond the jurisdiction of that court.

4. While the Probate Court has equity powers to a limited extent, in certain cases given by statute, it has no general equity powers, for issuing injunctions, making and enforcing decrees for the specific performance of contracts.

5. The Probate Court has no power over homesteads, except to ascertain whether the right exists in a given estate, and if so, to set it out.

6. But the estate is in no condition, as presented by the agreed case, to ask a court of equity to restrain the plaintiff from claiming a homestead; since, there, if a party seeks the enforcement of the specific performance of a contract, he must be able to assert and establish, that he has performed on his part.

7. Ante-nuptial and post-nuptial contracts are peculiarly subjects of equity jurisdiction and cognizance.

THIS was an appeal from an order of the Probate Court for the District of Washington, to set out homestead, and was tried by the court at the March Term, A. D., 1878, upon an agreed statement of facts, in writing. The court rendered judgment, *pro forma*, affirming the order of the Probate Court; to which the defendant excepted. REDFIELD, J., presided.

### STATEMENT OF FACTS.

On September 30, 1871, Diana B. Town and Gideon Mann entered into a contract, in writing and under seal, in words and figures following, to wit:

This agreement made and entered into this 30th day of September, in the year of our Lord one thousand eight hundred and seventy-one, by and between the undersigned Gideon Mann, of the one part, and Diana Town, of the other part, witnesseth:

That, whereas, a marriage is intended shortly to be had and solemnized between us, the said Gideon Mann and Diana Town, upon the contract of which marriage I, the said Gideon Mann, have agreed and do hereby agree, that if the same shall take effect, that the said Diana Town shall have, and I will pay to her the sum of fifty dollars per year during *my* natural life, provided that she outlives me, but if I outlive her, then fifty dollars per year during *her* natural life, and if any part of said sum should not be paid at my decease, she is to have the balance out of my estate. This sum I give and pay to her in cash, in lieu of homestead and dower; and I, the said Diana Town, of the second part have agreed and do agree to take and accept the said sum of fifty dollars per year, as above provided in lieu of dower and thirds, and I have agreed

4

and do agree, in consideration thereof, that I will claim no home-
stead, nor thirds, or assignment, or any further sum, out of said
Gideon Mann's estate.

In witness whereof we hereunto interchangeably set our hands
and seals, the day and year first above written.

Witness,         [ 5 cent U. S. Internal ]  GIDEON MANN,    (L. S.)
ADDISON PECK.    [    Revenue Stamp.     ]  DIANA B. TOWN, (L. S.)

At the time said contract was executed, the said Gideon Mann
owned a small farm of about fifty acres of land, situate in East
Montpelier, Vt., with about fifteen acres more of land situate in
Calais, Vt., and not connected with his said farm.

After the execution of said contract, and on —— —— the said
Gideon married the said Diana, and took her to his said farm to
reside.   Said farm then had upon it a dwelling house and out-
buildings, and the said Gideon had a homestead therein.

The said Diana afterwards left the said Gideon, in the spring of
1872, without his consent, and was gone out of the State, and
lived away from the said Gideon for about five months, and again,
in 1873, without his consent, she left the said Gideon, and lived
apart from him about eight months, and early in the year 1874,
without his consent, and against his will, she again left the said
Gideon, and while living separate and apart from said Gideon,
the said Diana, at the September Term, 1874, of the County Court
for the county of Washington, preferred her libel for a divorce
against the said Gideon, alleging as cause for divorce intolerable
severity.   Said libel was entered in said court, at said term, and
was continued on the docket of said court until the March Term,
1875, when it was discontinued.

After the discontinuance of said libel, the said Diana continued
to live separate and apart from the said Gideon, for the space of
nearly three years from the time she left him, as last aforesaid.

During the pendency of said libel in said court, an order for
temporary alimony was obtained, and the said Gideon paid in com-
pliance of said order from time to time the sum of one hundred
and ten dollars.

After said cause was discontinued, and while the said Diana
was living apart from the said Gideon, on the 10th day of April,
1875, the said Gideon, for a valuable and full consideration, con-
veyed the said farm to Emeline L. Mann, daughter of the said
Gideon by a former marriage ; and the said Emeline L. then gave
to her father, the said Gideon, a life lease of said farm.

Afterwards, and within three years from the time she left the
said Gideon, as last aforesaid, the said Diana returned to the said
Gideon at said farm.

The said Gideon deceased on the 15th day of January, 1877, leaving the said Diana his widow ; and had not, after his marriage with the said Diana, acquired a homestead interest in, or transferred such an interest to any other premises.

The said Diana did not sign the deed of the said farm to the said Emeline L., nor has she ever signed any instrument conveying or relinquishing any right or interest in or to said farm, save the contract hereinbefore stated.

On January 22, 1877, an administrator of the estate of the said Gideon was appointed ; and on May 12, 1877, the said Diana filed in the Probate Court a waiver of any jointure or pecuniary provision for her, and also an application to have a homestead in said farm set out to her, which application is the same set forth in the record in this cause.

*Fifield, Pitkin & Porter*, for plaintiff.

The conveyance from Gideon to Emeline L., made after the marriage, was inoperative so far as related to the homestead. Gen. Sts. c. 68, s. 10 ; *Abell* v. *Lathrop*, 47 Vt. 375 ; *Day* v. *Adams*, 42 Vt. 510. On the death of the husband, the homestead vested in the widow. Gen. Sts. c. 68, s. 5 ; *Day* v. *Adams, supra ;* unless the ante-nuptial contract can be enforced against her. The contract was to be performed during coverture and was, at law, annulled by the intermarriage. Com. Dig., Baron & Fenn. D. 1 ; Reeve Dom. Rel. 86 ; 2 Roper's Husb. and Wife, 77 ; 1 Swift Dig. 28–9 ; 2 Kent Com. 129 ; 1 Black. Com. 442 ; Story Eq. Jur. ss. 1367, 1370 ; *Long* v. *Kinney*, 49 Ind. 235 ; *Smiley* v. *Smiley's Admr.* 18 Ohio St. 543 ; *Burleigh* v. *Coffin*, 22 N. H. (2 Fost.) 118 ; *Miller* v. *Goodwin, Admr. et al.*, 8 Gray, 545 ; *Abbott* v. *Winchester*, 105 Mass. 115 ; *Chapman* v. *Kellogg*, 102 Mass. 246.

This is a case at law. " The Court of Probate is a court of special and limited jurisdiction, deriving all its authority from the statute." *Hendrick* v. *Cleaveland*, 2 Vt. 329 ; *Brown* v. *Est. of Sumner*, 31 Vt. 671. The jurisdiction of the County Court was measured " by the extent of the jurisdiction of the Probate Court." *Adams* v. *Adams*, 21 Vt. 162 ; *Boyden* v. *Admrx. of Ward & Tr.* 38 Vt. 628. And this court "sits merely as a court of error, the same as in cases at common law." *Holmes* v. *Est. of Holmes ; Boyden* v. *Admrx. of Ward & Tr. supra.*

The party asking a court to enforce the performance of a contract must show that he has performed the contract·on his part or is not in fault. Gideon paid the appellee one hundred and ten dollars, but under an order of court as alimony, and not upon the contract. The contract, not performed on his part, cannot estop or bar her at law, and will not be enforced against her in equity ; and it is no sufficient answer that she might have the contract enforced if she elected to rely upon it. 1 Greenl. Cruise, 203 ; *Pierce* v. *Pierce,* 9 Hun. 50 ; *Woodward* v. *Woodward,* 5 Sneed, 49 ; *Bliss* v. *Sheldon,* 7 Barb. 152 ; *Sheldon* v. *Bliss,* 8 N. Y. 31 ; *Hastings* v. *Dickinson,* 7 Mass. 153 ; *Gibson* v. *Gibson,* 15 Mass. 106 ; *Vance* v. *Vance,* 21 Me. 364 ; *Sullings et al.* v. *Sullings,* 9 Allen, 234 ; *Sullings* v. *Richmond et al.,* 5 Allen, 187.

*Heath & Carleton,* for defendant.

Diana B. Mann, at the time of the making of the ante-nuptial contract, was competent to make and execute the same, and is bound by its terms, unless relieved by statute. She is not relieved by statute. See ss. 506 c. 55 Gen. Sts. ; c. 68, Est. of Homestead, Gen. Sts.

The statute permitting widow to waive jointure, or pecuniary provision in lieu of dower, not applicable to homestead. The law providing for *waiver,* approved Nov. 15, 1821. The Homestead Act, Dec. 1, 1850.

As to validity of the ante-nuptial contract, we submit : It was made on sufficient consideration. It is under seal. The marriage itself was sufficient consideration. See Schouler, D. R. 263, 264, 271. Also the further consideration for her agreement, that the said Gideon should pay her $ 50 per year during her life (if he outlived her) and if she outlived *him,* $ 50 per year, so long as he lived, and to be paid out of his estate if not paid before his decease ; and she in consideration therefor agrees to accept the same in lieu of dower and homestead, and binds herself not to claim any homestead out of his estate. The thing she binds herself to do, or not to do, is to be done, *not during coverture,* but after the decease of her husband ; so the contract on her part

was not to be performed *during coverture.* And though a part of the consideration for her contract was in one contingency, (that of Gideon's outliving Diana) to be performed *during coverture.* Yet in that event there could be no claim for homestead, and we insist that the contract should be construed only in the light of the other contingency in which alone the question of homestead could ever arise. In this other contingency (that of Diana's outliving Gideon), the instalments might be all payable out of Gideon's estate, and so after dissolution of the marriage ; and this is the contingency that has happened. 16 Conn. 192 ; 5 Md. 324 ; 25 Md. 532 ; 11 Vt. 434 ; Story Eq. 2 v. 1370, 1371.

The opinion of the court was delivered by

Ross, J. This case came to the County Court by an appeal, on behalf of the estate, from the order of the Probate Court, for the district of Washington, decreeing that a homestead be set out of the estate to the plaintiff. The case comes to this court on general exceptions by the estate to the decision of the County Court, on the agreed statement of facts, affirming the decree of the Probate Court. It is not contended that the plaintiff is not entitled to a homestead in the estate, provided she is not legally debarred from claiming such interest, by the ante-nuptial contract under seal, entered into between her and the intestate. By the contract the intestate promised and agreed to pay to the plaintiff the sum of fifty dollars per year, during his natural life, if she outlived him, but if he outlived her, then fifty dollars per year during her natural life ; and agreed, if any part of said sum should not be paid at his decease, she was to have the balance out of his estate. This sum is declared to be in lieu of homestead and dower. The plaintiff thereby agreed to accept that sum in lieu of dower and thirds, and in consideration thereof that she would not claim a homestead, nor thirds, or assignment, or any further sum, out of the estate of the intestate. It is not contended by either party that the ante-nuptial agreement, so far as it relates to the homestead, falls within the provisions of ss. 5 and 6 of c. 55, Gen. Sts., relating to waiving of dower by jointure, or the other provisions there named.

· It is to be observed, that by force of the statute, the homestead vested in the plaintiff on the decease of the intestate (Gen. Sts. 668, s. 5) ; and that the estate is attempting to set up, and enforce the ante-nuptial agreement to defeat it. It is contended that the marriage furnished ample consideration for the agreement, and that the Probate Court should have enforced it, and have refused to order the homestead set out to the plaintiff. No doubt the marriage furnished sufficient consideration for the agreement. The difficulty does not lie in the want of a ·consideration to uphold the agreement. The difficulty arises in the operation of the agree-. ment, and in the power of the Probate Court to enforce it. The contract cannot have the effect of a release, or discharge of the plaintiff's homestead right. A release or discharge is only predicable of something which éxists at the time the release or discharge is given. When the ante-nuptial contract was entered into, the plaintiff had no homestead in the premises, nor in the estate of the intestate, nor even an inchoate right to one. There was nothing in existence for the contract to operate upon as a release or discharge. It is true a covenant never to prosecute an existing demand operates as a release, to prevent circuity of action. But there must be a demand to release. A release of a future demand, not then in existence, is void. *Hastings* v. *Dickinson et ux.*, 7 Mass. 153. Neither can her covenant not to claim homestead, operate as an estoppel on her right of homestead. The plaintiff is claiming the homestead, which the statute vests in her. Her covenant not to do so is executory. A party cannot be restrained, by way of estoppel, from asserting a statutory right, because it is in violation of an executory covenant. Neither can such a covenant be set up, and given operation by way of rebutter, to bar the assertion of the homestead right by the plaintiff. *Gibson* v. *Gibson et al.*, 15 Mass. 106 ; *Sullings* v. *Richmond et al.*, 5 Allen, 187. Her covenant not to claim a homestead in his estate is expressly made to rest upon the consideration of the payments of money, covenanted to be paid by him. His covenant to pay money was extinguished by the marriage, so far as the payments were to be made during coverture. Apparently by the covenant all the sums were to be paid during the coverture. It is true, he cov-

enants, " if any part of said sum should not be paid at my decease, she is to have the balance out of my estate." Notwithstanding this provision, it may be questionable, whether by the terms of the covenant he was not, legally, by the letter of the contract, to pay all the sums, during the coverture ; and the same being extinguished by marriage, the consideration for her covenant did not fail, except so far as it rested on the marriage contract, unless she, after the marriage, received some of the payments. In the agreed statement of facts, it is not said that he paid any of the money stipulated to be paid by him. From what is said about the payments, on the orders for temporary alimony, it is rather to be inferred that he did not make any payments under the contract. The contention of the estate to have the ante-nuptial contract enforced against the plaintiff's homestead right, is, in effect, to have the Probate Court decree that she shall specifically perform her covenant, not to claim a homestead from the estate. It is a matter of equity jurisdiction ; and that too arising outside of the ordinary matters pertaining to the settlement of estates. The jurisdiction of the Probate Court is general and exclusive, in the first instance, over the ordinary matters relating to the settlement of estates. While it has equity powers, to a limited extent, and more extensively over some special subjects, when it has been conferred by statute, it is not possessed of general equity powers. It has no power to issue injunctions, or make and enforce decrees, for the specific performance of contracts. No power is given to it over homesteads, except to ascertain whether the right exists in a given estate, and if found to exist, to set it out. As we have seen, the plaintiff's homestead in the premises is conferred by the statute, and has not been released nor discharged by the ante-nuptial contract. What the estate asked the Probate Court, in effect, to do, was to enforce the contract specifically against the plaintiff by enjoining her from asserting her legal right to the homestead. This was entirely beyond the jurisdiction of the Probate Court. Such contracts, both ante-nuptial and post-nuptial, are peculiarly subjects of equity jurisdiction and cognizance ; and in courts of equity are upheld and enforced, on the rules and limitations which govern that court in decreeing specific performance of contracts. *Sullings*

v. *Richmond et al., supra.* But if the Probate Court was clothed with full equity powers, the agreed case discloses no ground of relief for the estate. It is essential that the party, asking for the enforcement of the specific performance of a contract, should be able to aver and establish a performance of the contract on his part; especially, if his performance thereof forms the consideration for the covenants sought to be enforced. When the estate, therefore, seeks to have the plaintiff's covenants in the contract specifically enforced against her, it takes upon itself the burden of showing that the intestate has performed the contract on his part. As we have said, the agreed case is silent on this point; but it is to be inferred from what is said, that he did not perform. Schouler, in his work on Domestic Relations, p. 271, speaking of the enforcement of this class of contracts, says : "But where the performance is sought by the defaulting party, the contract cannot be enforced against the person injured through such default." In *Pierce* v. *Pierce,* 9 Hun. 50, the same doctrine is held, and applied. It is there said : "When a man in contemplation of marriage, agrees to make a settlement on his wife, in consideration of which she agrees to relinquish her rights in his property at his decease, and fails to make the settlement, the widow is not barred of any right, which she might have asserted, if no such agreement had been executed." *Woodard* v. *Woodard,* 5 Sneed, 49 ; *Bliss* v. *Sheldon,* 7 Barb. 152, affirmed by the Court of Appeals, 8 N. Y. 31 ; *Vance* v. *Vance,* 21 Me. 364 ; *Sullings et al.* v. *Sullings,* 9 Allen, 234, are to the same effect. The case of *Bliss* v. *Sheldon* is almost identical with the case at bar. Nor does it avail, that the widow has a claim against the estate for the unperformed covenants of the deceased husband. The purpose and object of the covenant is to make provision for her, and to place it beyond the contingency of hazard, or inability of the estate to respond in full. With that hazard added, it does not follow that she would have accepted the provisions of the contract, and entered into the covenant to waive the right which the law gives her to the estate of the deceased husband. All the cases hold, that it is of the essence of the contract, that the husband perform agreeably to his covenants, in order to hold the widow to the per-

formance of her covenants after his decease. It results, therefore, that the ante-nuptial contract set forth in the agreed case is not at law a bar, release, or estoppel, upon the plaintiff's homestead in the estate ; that the Probate Court has no such equity jurisdiction as would enable it to enforce specifically against her, her covenant not to claim a homestead ; and that if it had, the agreed case furnishes no ground for such enforcement. The judgment of the County Court is affirmed, and ordered to be cerified to the Probate Court.