MARIA N. GRAVES AND OTHERS v. CHANDLER WAKEFIELD.

## Ante-Nuptial Agreement.

1. When a husband, under the statute, is entitled to a portion of his deceased wife's estate, unless debarred by an ante-nuptial agreement, it is incumbent upon her heirs to show that such agreement existed and was in force at the time of her decease, to prevent his taking according to the statute.

2. Though it may be a presumption that the ante-nuptial agreement now exists because it once existed, yet this may be overcome by the fact that no such agreement was ever found among the wife's papers.

3. The exceptions do not show that the court below presumed that the ante-nuptial agreement existed; and the Supreme Court have no power to presume it.

4. A married woman has the power to surrender an ante-nuptial agreement to her husband to be cancelled.

5. A witness testified that he made and the parties executed an ante-nuptial agreement. The court below did not find whether this was true or not; but the Supreme Court, under the circumstances, disposed of the case as if found true.

6. In this case the husband takes from the wife's estate according to the statute in force at the time of her decease, and not the one in force at the time of her marriage.

7. It is intimated that the equity jurisdiction of the Probate Court is too limited to give effect to such an ante-nuptial agreement as was claimed.

APPEAL from the order of distribution of the Probate Court for the district of Marlboro, of the residue of the estate of Lucretia Wakefield. The Probate Court ordered and decreed that this residue, $1,600, be paid to the defendant.

Heard at the September Term, 1880, Windham County, VEAZEY, J., presiding. Trial by court ; and the decree of the Probate Court was affirmed. The said Lucretia's will was duly proved ; and her estate distributed except this amount. The plaintiffs are her heirs-at-law ; and the defendant was her husband. The defendant and testatrix were married August 13, 1869. It was the second marriage of each. The other facts are sufficiently stated in the opinion.

*R. W. Clarke* and *Haskins & Goodnow*, for the plaintiffs.

The plaintiffs insist that the ante-nuptial contract, having been executed in 1869, was made and executed by the parties thereto

with reference to the then existing law as to the distribution of estates, and that it governs in this case. Gen. Sts. c. 55, s. 56; *Jacobs* v. *Jacobs*, 42 Iowa, 600.

Ante-nuptial contracts have ever been upheld by the courts. *Hathaway* v. *Hathaway*, 46 Vt. 234; Brayt. 238; 39 Vt. 319; 43 Vt. 224; 44 Vt. 555. The Act of 1870, No. 31, cannot apply to, nor control this residue without impairing the obligation of this ante-nuptial contract. 1 Aik. 257; 14 Curtis' Rep. 628; 15 Curtis' Rep. 228; 3 How. 307; 6 Otto, 595. But if the Act of 1870 applies, then the defendant being the *second* husband, takes only as a *second* wife would under the Gen. St. c. 55, s. 6.

*Davenport & Eddy* and *A. Stoddard*, for the defendant.

By force of this statute, Chandler Wakefield, as husband, takes by inheritance. He is " entitled to the whole of her estate forever," of which she died intestate, because that estate is less than $2,000. It was his by operation of law, and it was the duty of the Probate Court to make effectual the provisions of the law, by passing the judgment and decree appealed from. He does not acquire title by force of the decree. He had that before. He takes by descent and inheritance, just as other heirs take under our statute. *Sawyer* v. *Sawyer's Heirs*, 28 Vt. 249; *Johnson* v. *Johnson*, 41 Vt. 467; *Frost* v. *Frost*, 40 Vt. 625.

If defendant has made any agreement, now in force, which makes it unjust or inequitable, that he should take as surviving husband, under our statute of distribution, plaintiffs should bring their bill in equity to the court which has jurisdiction to grant relief, and enforce that agreement. 2 Story Equity, s. 983, *et seq.;* Reeves Dom. Rel., 163 and notes; Schouler Dom. Rel. 263; *Pinney* v. *Fellows*, 15 Vt. 525; *Porter* v. *Bank of Rutland*, 19 Vt. 410; *Bruce* v. *Thompson*, 26 Vt. 741; *Barron* v. *Barron*, 24 Vt. 375. The wife had power to destroy the paper, to surrender the contract. 43 Vt. 224; 47 Ib. 50; 51 Ib. 20; 50 Conn. 146.

The opinion of the court was delivered by

Ross, J.   It is not contended that the decree of the Probate Court in distributing the residue of the estate of the testate, Lu-

cretia Wakefield, was erroneous, if unaffected by the claimed ante-nuptial contract between her and the defendant.

George Howe, Esq., testified that he wrote an ante-nuptial contract for the parties, a short time before their marriage, which was duly executed and taken away by them. By its terms, " neither of the parties was to have anything to do with the property of the other ; but that the same should go to their respective heirs, at the decease of each respectively." The County Court by whom the case was tried, has not found whether this testimony was true. Without such finding no error can be legally predicated of its judgment sustaining the decree of the Probate Court. It is perhaps fair to presume, that the County Court did find this testimony to be true. The counsel on both sides, in argument, have treated the case on the assumption that the County Court found the facts to be as this witness testified. This court have therefore treated that portion of the exceptions which details the testimony of this witness as though it were a statement of facts found by the County Court. The exceptions further state, that the executor took possession of the testator's estate, " including her papers " ; but that the ante-nuptial agreement was not among them, and could not be, and has not been found. There is no statement of a finding by the County Court, whether the ante-nuptial agreement was, or was not, in existence, and in force, at the decease of the testate. To maintain their exceptions, and fairly raise the question of the effect to be given to such ante-nuptial agreement upon the distribution of the residue of the estate, not disposed of by the will, it was necessary that the plaintiffs should have introduced evidence warranting finding the fact, that the ante-nuptial agreement was in existence at the decease of the testate ; and have had the County Court find that fact. There was testimony before the County Court bearing for and against this fact. Mr. Howe's testimony, if true, showed such a contract executed by the testate and defendant, and taken away. It does not show that it was in actual existence at the time of, and made operative, by their marriage. When a fact, which in its nature is continuing, is once shown to exist, a presumption is raised in favor of its continued existence until something is shown to the contrary.

Hence Mr. Howe's testimony, standing alone, at most only raised a presumption that the ante-nuptial agreement was in existence, binding the parties, at the time of their marriage, and at the time of the decease of the testate. Whether the County Court considered that this presumption was fairly overcome by the fact, that the agreement could not be found in the proper place for its deposit, or elsewhere, is not stated. It is not the province of this court to pass upon the weight to be given to conflicting testimony, and declare what fact, or facts, the trier should have found established thereby, unless in very exceptional cases, and then, only in revision of the action of the County Court upon the same subject-matter.

Where the exceptions show that the County Court has passed upon the legal effect of a certain statement of facts, either found by it, or submitted to it, by the report of referee, or auditor, and it is apparent, that it has erred in the legal effect and result of such facts, it is the province of this court to correct such error. But where the error of the County Court consists in the weight to be given to a certain fact, or facts, tending to establish some other independent controlling fact, this court has no power, or jurisdiction, to correct its determination, in regard to whether such independent fact is, or is not, established. In the case at bar, the controlling fact to be found, in order to raise the question insisted upon by the plaintiffs, is not whether an ante-nuptial agreement once existed, but whether it was in force between the testate and defendant at her decease. There is no statement of a finding of this controlling fact by the County Court. Its judgment is as consistent with its having found that this fact was not established, as that it was established. Hence no error is apparent from the record. But if this court were to determine whether this fact was established, by the presumption of its existence, raised by Mr. Howe's testimony, if true, when encountered by the fact, that it could not be found in the place where we should naturally look for it, or elsewhere, we think that the presumption is fairly overcome by the proof tending to show its non-existence. We entertain no doubt but that the testate, though under the disability of coverture, could surrender such a contract to her husband for

Graves *v*. Wakefield.

cancellation. It related to her separate estate, which under our law, *ex necessitate*, she must have power to deal with, especially, where the title to the separate estate is vested in the married woman, and not in a trustee. It has been held, that she can make a valid gift of such property to her husband during coverture. *Caldwell, Admr.*, v. *Renfrew*, 33 Vt. 213. If she can dispose of her entire estate to the husband, during coverture, by will, by gift *inter vivos* or *donatio causa mortis*, much more she may relinquish any contract limitations on his right to the same, which exist *solely* between her and her husband. We are the more content to dispose of this case upon these views, from the necessarily loose and uncertain character which must attach, in regard to the exact terms and provisions of such a contract, when obliged to be established by the recollection of a witness after the lapse of any considerable time. Nor is it quite apparent how the provision of the contract relied upon, as stated by the witness, that the property of each " should go to their respective heirs, at the decease of each respectively," could debar the defendant from taking such a share of the testate's residuary estate, as the statute conferred upon him subsequently to the making of the contract. Doubtless difficulties would be found to exist in giving effect to this provision of the contract as a release, or bar, or estoppel, of the right subsequently conferred upon the husband by the statute, especially in a court as limited in its equity powers and jurisdiction as is the Probate Court. *Mann* v. *Mann's Est.*, 53 Vt. 48. But on the exceptions, as made up, a consideration of these latter questions is rendered unnecessary.

The judgment of the County Court is affirmed, and ordered to be certified to the Probate Court.