DAPHNE D. LITTLE *v.* C. W. H. DWINELL, ADM'R,
HAZEN A. LITTLE, WALTER S. LITTLE,
SARAH H. MERRITT AND GEORGE·
S. SIBLEY.

[In Chancery.]

*Widow. Ante-nuptial Agreement. Dower.· Agreement.* ·
*Homestead. Settlement of Estates, Court of Chancery,*
*Jurisdiction of. Probate Court. Grantees*
*affected by Notice. Attorney. Contin-*
*gent Claim. Annuity. Costs.*
R. L. ss. 2204–14, 2219.

1. When the heirs of a deceased husband's estate refuse to pay an annuity to a widow, after it had been paid for several years, which annuity had been provided by an ante-nuptial agreement, and intended to be in lieu of the provisions of law, she is entitled to take under the statute a homestead and dower, the same as though no ante-nuptial agreement existed, the court never having · decreed a distribution of the estate.

2. And in such case, when the administrators, after paying the debts, turned a large part of the property over to the heirs, the rights of the widow may be enforced by bill in equity, not only against the heirs, but their grantees affected by notice of the widow's claim.

3. The homestead and dower should be set out of that portion which was not sold by the administrators.

4. ANNUITY. CONTINGENT CLAIM. The annuity was not strictly a contingent claim.· Its payment was a condition precedent to the right of the heirs to take the estate. Sections 2204–6, R. L., are not applicable. The oratrix is not a common creditor; she stands upon the rights of a widow to share in the distribution of the estate.

5. NOTICE. The records of the town showing that the title to the realty was in the oratrix's husband, the probate records showing that the estate had not been distributed by decree of court, and that the oratrix was entitled to an annuity, the knowledge of the mortgagee's attorney, who took the mortgage, of the condition of the property, constitute a sufficient notice to the grantees.

6. COSTS. The oratrix is entitled to costs against all the defendants, except the administrator, although the decree below in her favor was modified to some extent.

BILL IN CHANCERY. Heard March Term, 1882, Washington
County. REDFIELD, Chancellor, decreed, that the annuity

provided for the oratrix in and by the ante-nuptial contract is a valid and subsisting claim against the estate of Walter Little, upon which she is entitled to be paid the sum falling due thereon, July 27, 1875, and all sums falling and to fall due thereon thereafter; that the defendant Sibley, and those through whom he claimed to hold the property mortgaged by the heirs of said Walter Little, took with notice of the claim of the oratrix, and her right to be paid from the assets of that estate; that said property being all of the unadministered and undistributed assets of said estate stands charged as with a lien for the payment of said sums due and to fall due upon said annuity—such payment to be enforced against said property by foreclosure. The bill was dated August 1, 1880.

*J. A. Wing, Geo. W. Wing,* and *S. C. Shurtleff,* for the defendants.

By the common law, the creditor had no lien on the land as against the debtor, and none on the land as against the heir or devisee, if he alienated the land before suit brought. He might be liable for what he sold the land for, but the land could not be followed into the hands of an assignee. *Record* v. *Williams,* 7 Wheat. 59; 1 Jar. Wills, 584; 20 Johns. 414; 29 La. Rep. 440; 31 Mo. 98; *Wood* v. *Leland,* 22 Pick. 503; 1 Pick. 387; *Wilson* v. *Kimbley,* 7 East, 128; 1 Russ. & M. 338; 71 N. C. 66; *Page* v. *Adams,* 4 Beav. 269; *Hall*'v. *Martin,* 46 N. H. 337; *Tickner* v. *Harris,* 14 N. H. 272; 2 Wait Act. & Def. 397; Rawle Cov. 543–9; Will. Ex. 1692; 3 Sug. Vend. 97; 2 Lead. Cas. Eq. 133, 372; 3 Will. Ex. 1790.

The debts having all been paid in 1861, the administrator voluntarily surrendered up the property to the heirs. Therefore the heirs became seized in fee in their own right, free and clear of all incumbrance; but leaving them liable personally for any contingent debt of Walter Little that might afterwards arise against his estate. They were personally liable as for their own debt, but no lien existed on the land.

They could sell or mortgage it. Under what rule of law did the marriage contract become a lien on the real estate? There is no such rule in the common law or the statute. The Revised Statutes contain a perfect system as to contingent claims.

The law requiring a decree of the property at the end of two and a half years to the heirs, the Court of Chancery, will treat that as done which the law requires to be done; and the debts having been all paid, and the administrators having surrendered the real estate to the heirs, the want of a formal decree to the heirs was wholly unnecessary. The debts having been all paid, the widow's lien was gone. *Blackmer* v. *Blackmer*, 5 Vt. 355; Rev. St. p. 357–8.

When Sibley took his deed or assignment, in March, 1878, the heirs had been in possession from the death of Walter Little, July 27, 1859, about nineteen years, without any interference by the oratrix with the premises. He made all the enquiries the law required. *Adams* v. *Soule*, 33 Vt. 538; *Boyden* v. *Wood*, 38 Vt. 628.

On the death of the ancestor, the real estate instantly vests in the heirs, subject to the lien of the administrator for the payment of debts; which lien expires and the title vests, when the debts are paid, without decree of the court. *Hubbard* v. *Ricart*, 3 Vt. 207; *Hyde* v. *Barney*, 17 Vt. 280; *Austin* v, *Bailey*, 37 Vt. 219.

*Pitkin & Huse,* for the oratrix.

The claim of the oratrix was not barred because it was not presented to the commissioners. *Lowrey* v. *Stevens*, 6 Vt. 113; *Clark* v. *Winchell*, 53 Vt. 408. As to the annuity, see *Hall* v. *Hall*, 2 McCord Ch. (S. C.) 281; *Manning* v. *Randolph*, 4 N. J. L. 144; 4 Bradf. (N. Y.) 129. The claim was sufficiently presented to the Probate Court. R. L. ss. 2204–5. The whole estate was charged with the payment of debts. Will. Real Pr. 77, 80; 1 Wash. R. P. 76; Green. Cruise, 57, 60; 4 Kent Com. 420; 4 Mass. 150; R. L. ss. 2066,

2088, 2132; *Hubbard* v. *Ricart,* 3 Vt. 207; *Sherman* v. *Abell,* 47 Vt. 547.

The land when conveyed by the heirs was charged with this outstanding debt. The grantees took with notice of the widow's rights. 1 Story Eq. ss. 395, 408, *n.*; 2 Story Eq. 1257; *Hart* v. *Bank,* 33 Vt. 252; 1 Wait Act. & Def. 231.

The opinion of the court was delivered by

ROSS, J. This is a bill in chancery by the widow of Walter Little, deceased, against his administrator, heirs, and a purchaser from the heirs, of most of the real estate of which the intestate died seized, to enforce the payment of an annuity agreed upon in an ante-nuptial contract between the oratrix and intestate; or to have ascertained and set out to her from the estate the homestead, dower, and other provisions made by law for the widow when no ante-nuptial contract exists. The essential facts pertinent to the case, admitted by the pleadings or proven by the testimony, are as follows : September 30, 1857, the intestate, oratrix, and a trustee in her behalf, in contemplation of a marriage, which was soon thereafter solemnized, between the intestate and oratrix, entered into an ante-nuptial contract, by which, among other things, the oratrix covenanted and agreed, that in case she should survive the intestate, she would not claim, as his widow, any portion of the estate which he might leave, "except an allowance, or annuity, of two hundred dollars per year, during the time of her natural life," not including what he might leave her in his will. Walter Little deceased July 27, 1859, leaving a large estate; and administrators, appraisers, and commissioners were duly appointed on his estate. The real estate was appraised at $20,000, and the personal estate at over $21,000. The debts allowed against the estate were most $13,-000. The real estate consisted of a woolen factory, dwelling-houses, store, &c. There was quite a large amount of manufactured goods, and considerable stock unmanufact-

ured and in the process of manufacture, belonging to the estate. This was manufactured and disposed of at a profit to the estate. There were three heirs to the estate, two of whom were then of age, and one a minor. The heirs, who were of age, continued the manufacturing, and the factory with its belongings went immediately into their possession. There is no evidence that the original administrators took possession of any of the real estate, except the store. They delivered considerable personal property and paid large sums to the heirs; and procured an extension of the time allowed for the settlement of the estate until 1862, when notice was given that they would settle their administration account. The account was not then settled, and the matters of the estate ran along until both administrators deceased. The heirs remained in the possession of the real estate. The administrators paid the widow the annuity due under the ante-nuptial contract, while they were in the active administration of the estate; and heirs did also for several succeeding years. There was no other allowance asked for, or made to the widow from the estate, except the Probate Court assigned certain household furniture to her, and allowed her a small sum for support before the first installment of the annuity became payable. In 1869, an administrator *de bonis non* of the estate was appointed. His appointment, if not asked for by, was evidently agreeable to the heirs, as two of them were the sureties upon his administration bond. He took possession of the real estate belonging to the estate, rented the factory, and other portions of it, obtained license from the Probate Court, and sold over $4,000 worth of it; settled the account of the original administrators, in which it was found the estate was indebted to them $4,000; got into litigation with the heirs, which was finally compromised, and his account was finally settled in the Probate Court, by which the estate was indebted to him $965.29. At the time of the settlement of his account, the heirs applied to have the estate distributed.

During his administration the annuity to the widow was not paid when due, and she was pressing the administrator for payment, which he finally made. During the whole process of the administration thus far, her right to the annuity was recognized by the heirs and administrators. The ante-nuptial contract, she had presented in the Probate Court, whenever there was any move looking towards a final settlement and distribution of the estate. She appeared by counsel at the time of the settlement of the account of the administrator *de bonis non* April 22, 1872, and opposed a distribution of the estate unless her annuity was provided for. Walter Little, one of the heirs, appealed from the allowance of the account and from the denial of a distribution of the estate. The appeal was duly entered in the County Court. February 19, 1873, the appeal was compromised by the administrator surrendering to the heirs all the real and personal property belonging to the estate, and by Hazen A. Little giving him a bond, with sureties, for the payment of $341.88, as the balance for which he was to have judgment on his account, for the payment of the annuity of $200 per year to the widow, and for the payment and saving him harmless from any other liabilities which he might be under for the estate. In the judgment, in the appeal suit, no judgment was asked or made in regard to the denial by the Probate Court of the petition of the heirs to distribute the estate to them. At this time, the annuity, so far as it had become due, had been paid. July 3, 1873, the widow caused the ante-nuptial contract to be presented to the Probate Court, and took witnesses there to prove the due execution of the contract. She left the contract with the Probate Court. The judge placed it in an envelope, and endorsed on the back of the envelope, "Filed in the Probate Court, July 3, 1873, to be allowed as a contingent claim against the estate of Walter Little. Attest, N. A. Chase, Register."

On a separate paper, in the envelope, was written by the

Probate Court: "July 3, 1873. Contingent claim presented against estate of Walter Little, being a contract before marriage, dated Sept. 30, 1857.

"Elia A. Bliss, now Hutchinson, being sworn, testifies, that she was present and saw W. Little, Daphne D. Bliss, and Alpheus S. Bliss sign a certain contract, and she signed the same, with Harriett N. Bliss, as witness.

"Alpheus S. Bliss, the trustee, being sworn, testifies to the execution of the paper with the other parties; and that the contract is now in force; that all the annuities had been paid to July 27, 1872."

The envelope thus filed, enclosing the contract, and the paper written upon, as above, was placed in the safe used by the Probate Court, and there found after the commencement of this suit in August, 1880. In the mean time the then judge, and register of probate, had both deceased. There was no other mention of this contract of annuity shown to exist in the records of the Probate Court. At the time it was thus filed and placed in the safe of the Probate Court, nothing was due upon the contract, and nothing would be due thereon until the 27th of the same July.

The sum then falling due, and the installment which fell due July 27, 1874, were duly paid by the heirs, since which time nothing has been paid on the contract. Thus the records of the Probate Court showed a widow surviving, nothing that the law requires to be set out to the widow set out to her, a recognition of the annuity by several payments thereon by the administrators, the lodging of it with filing and proof of it, as before stated, in the Probate Court, and no distribution of the estate to the heirs, but a denial thereof.

Before the administrator *de bonis non* was appointed, the heirs, in running the factory, became largely indebted to Faulkner, Kimball & Co., of Boston, for advances. To secure the indebtedness thus created, the heirs of the estate gave them a mortgage, April 27, 1868, of all the real estate belonging to the estate. Faulkner, Kimball & Co. were not

then shown personally to have had notice of the annuity
to the widow, except as effected by the land records of the
town, showing the title to the property mortgaged to be in
Walter Little, deceased, and the records of the Probate
Court in regard to the settlement of his estate. The mort-
gage was taken through Homer W. Heaton, Esq., their
attorney. He had been attorney for the oratrix in regard
to the annuity, and when he took the mortgage knew all
about the annuity as it stood related to the estate, and the
heirs' right therein; and May 11, 1868, communicated to
Faulkner, Kimball & Co., full knowledge in regard to the
same. The amount due under the mortgage was finally
settled in March, 1870. The annuity due the widow was
then fully made known to Mr. Faulkner and to Chester
Bugbee, who assisted the heirs in paying the sum due
thereon, and took an assignment of the mortgage. Mr.
Bugbee was a signer on the bond from Hazen A. Little to
the administrator *de bonis non*, for the payment of the annu-
ity among other things. He having deceased, his adminis-
trator, who also knew of the existence of the annuity, in
March, 1877, procured a foreclosure of the mortgage against
the heirs, but did not make either the oratrix or the admin-
istrator *de bonis non* parties to the same, the same to become
absolute April 1, 1878. On the decree becoming absolute,
by a previous arrangement with the heirs, the defendant
Geo. S. Sibley paid the amount due on the decree, about
$2,625, and took a deed of the premises covered by the
mortgage from the administrator of Bugbee's estate. The
premises conveyed are shown to have been then worth
$5,000. Geo. S. Sibley is brother-in-law of Hazen A. Little;
and, before making the purchase and taking the deed,
knew of the ante-nuptial contract and the annuity due and
falling due thereunder. He caused the land records where
the estate is situated and the probate records to be exam-
ined before making such purchase, and finding no charge
of the annuity upon the real estate, was advised he could

Little *v.* Dwinell.

safely purchase the same, without being affected by the oratrix's claim, if any she had.   In the ante-nuptial agreement there is no express agreement of the intestate to pay the oratrix an annuity of $200.   The intestate therein covenants not to claim any property of which the oratrix was then possessed, either while she was living or after her decease; and the oratrix therein covenants, that, in case the marriage should be solemnized, and she should survive the intestate, "she shall not claim or have any portion out of any estate he may leave at his decease, except an allowance or annuity of two hundred dollars per year, during the time of her natural life, and she hereby waives all other and further allowance," &c.   This covenant was a limitation on her rights in the estate, beneficial to the heirs.   There being no express agreement by the intestate that his estate should pay the annuity, it might be doubtful whether the oratrix could claim that the heirs should pay her the annuity, rather than allow her to take that portion of the estate which the law, in the absence of such a contract, would give to her.   But this question does not arise in the case. The heirs and administrators have all acquiesced in the right of the oratrix to receive the annuity in lieu of the provisions made by the law.   She has also manifested a purpose to perform the covenant she entered into with the intestate.   The question is, What are the oratrix's rights under the facts of the case, as already stated?   The counsel for the defendants has furnished a most elaborate brief, and therein discussed many questions, which, in the view we take of the law applicable to the facts, do not arise in the case.   The main fallacy underlying the entire brief is the treatment of the oratrix as a common creditor of the estate. . The ante-nuptial contract created no debt in favor of the oratrix against Walter Little, or his estate.   A right to receive money from his estate might or might not arise out of the contract in her favor.   If her decease antedated his, or she deceased within less than a year after his decease,

she would be entitled to nothing under it from his estate. It is merely a contract provision for what she shall receive in a certain event out of his estate, in lieu of the provisions made for the widow by law. It was not even a contingent claim against his estate which existed at his decease, in the ordinary acceptation of that term, and secs. 2204 to 2214 R. L., relating to such claims, are not applicable to the claim she now presents. If it were such a claim, she did enough, if it were seasonably done, to protect her rights under sec. 2204. That section only requires that such claims shall " be presented with the proof to the Probate Court, or to the commissioners, who shall state, in their report, that such claim was presented to them." There is no provision of the statute which requires, that the Probate Court or commissioners shall allow the claim. From its very nature it cannot be allowed; because it is not as yet a debt against the estate, but only a contingent claim, which on the happening of the contingency becomes a debt against the estate. All the provisions of the statute on the subject of contingent claims relate to such claims as on the happening of the contingency may become a debt against the estate— such a debt that the holder would have the right to share in the distribution of the estate with the other creditors. An annuity is contingent, and if the intestate was under contract obligation to pay it from year to year, so far as it was not due at the decease of the intestate, a proper contingent claim to be presented under the provisions of the statute against the estate. Such was the claim—a debt upon the bond of the intestate for the payment of an annuity of $100 during the life of the annuitant—in *Blackmer* v. *Blackmer*, 5 Vt. 355. In the case at bar, the oratrix had no right to share with the other creditors of the estate in the payment of their debts. The ante-nuptial contract did not relate to, nor touch, the estate until the creditors were all paid in full. It related solely to the distribution of what was left of the estate after the creditors were all paid. The

present application is, that she may receive from the estate left after paying the creditors, her due share and proportion of the same as determined by the ante-nuptial contract, or the provisions of the law. By the provisions of the statute a homestead and dower in the real estate immediately upon the decease of the intestate, and a right to one third of the personal estate above what was necessary for the payment of the debts, vested in the oratrix, unless she was barred therefrom by the provisions of the ante-nuptial contract. Her covenant to receive the annuity in lieu of the provision of the law did not bar her from claiming the homestead, dower, and one third of personal property. *Mann* v. *Mann's Est.* 53 Vt. 48. It is there shown that a performance of the ante-nuptial contract on the part of the intestate or his estate is an essential prerequisite of the right of the estate to set up the widow's covenant therein as a bar to her rights in and to the estate as declared by the statute.

The only section of the statute relating to barring a widow of dower is sec. 2219, R. L. There is no statute which in terms bars her of a homestead. That portion of sec. 2219, which is applicable to the oratrix, reads as follows: "But if the widow was not the first wife of the deceased, and he leaves no issue by her, and an agreement was entered into between them, previous to their marriage, in relation to the widow's claim on the estate of her husband in lieu of dower, and if, in the opinion of the court, she has a sufficient provision for her comfortable support during life, the court may deny to such widow her dower, or any provision other than such as is provided by the agreement between the parties." The homestead is only inferentially extinguished by the provision; and the oratrix's right to homestead and dower is not barred by it until the Probate Court has so adjudged. The heirs have never called upon the Probate Court to make any adjudication upon the oratrix's right to homestead, dower, and thirds in the estate.

The Probate Court never has passed upon the sufficiency of the annuity in lieu of homestead, dower, and thirds, except by refusing to distribute the estate to the heirs, on her objection that she was not secured in the payment of the annuity. The oratrix, instead of standing like a common creditor of the estate, stands upon the right of a widow to share with the heirs in the distribution of the estate.

She is not therefore affected adversely by a failure to present the ante-nuptial contract to the commissioners or to the Probate Court, seasonably, or within the time limited by the statute for the presentation of contingent claims. She was willing to receive the annuity in accordance with the contract, in lieu of homestead, dower, and thirds, if it should be paid to her. She was only bound to be vigilant against a distribution of the estate to the heirs, unless her rights were recognized and secured. This she has done. The payment of the annuity is a condition precedent to the right of the heirs to take the whole estate. When they cease to pay the annuity, she, as against them, has the right to assert her claim to that portion of the estate which the law gives to her, at least until the heirs procure a decree of the Probate Court declaring that she shall be barred therefrom, by reason of the sufficiency of the provisions of the ante-nuptial contract. If the administrators and heirs had refused to recognize and pay the annuity her right to homestead, dower, and one third of the personal estate remaining after the payment of the debts, would have been absolute, and they could not, in the Probate Court or in a court of equity, have set up her covenant in the ante-nuptial contract to defeat her claim and right thereto. It is manifest that the Probate Court would make no decree barring her of homestead, dower, and one-third of the personal estate, without requiring ample security for the payment of the annuity promptly as it should fall due. It is equally manifest that the statute contemplates that such a decree shall be made by the Probate Court, if at all, while the

estate is in hand, and the homestead, dower, and a third of the personal property, or some portion of them, can be awarded to her, if the provisions of the ante-nuptial contract are found insufficient. The oratrix is no more in the fault, in failing to procure such a decree seasonably, than are the heirs and those who stand upon their rights. Both parties have gone along under the ante-nuptial contract until the heirs have received and used up all the personal property and a considerable portion of the real estate of the estate. Now the heirs and those who stand in their rights continue to hold, and to take the use of the remainder of the real estate, and refuse to pay the annuity. It is certainly inequitable to allow the heirs to do this. The payment by the heirs and estate of the annuity for fourteen years, and the receipt of the same by the oratrix, together with the other facts in regard to the receipt and use of the property by the heirs, make it a proper case for equitable jurisdiction. The functions and powers of the Probate Court are not adequate for the proper adjustment of such a case, and probably not at all to extinguish the homestead. *Mann* v. *Mann's Est.*, *supra*. As regards the heirs, we think there can be no doubt but they are in law and equity bound either to pay the oratrix the annuity in arrear, and to secure the payment of that which hereafter may fall due, or to yield to her the homestead and dower in the whole real estate originally belonging to the estate, out of that portion of the real estate not sold by the administrator *de bonis non,*—which sale was really for the payment of the debt of the heirs to the former administrators,—and to account for the rents and profits of the same since they ceased to pay the annuity. By the ante-nuptial contract the annuity takes the place, if in the judgment of the Probate Court sufficient, of homestead, dower, and one third of the personal estate. The oratrix's dower would be, in this case, a life estate in one third of all the real estate of which the intestate died seized. In this one third, she would also take the reversion

of the homestead of the value of five hundred dollars. The annuity being a substitute for these provisions of the statute, when the heirs refuse to furnish the substitute, it is the duty of a court of equity, as against the heirs, to give to her the homestead and dower right in the real estate, and the use of the same from the time they refuse to pay the annuity.

Nor do we think that defendant Sibley stands in any better position in regard to the claim of oratrix than do the heirs of Walter Little. He stands upon the rights secured by a foreclosure of the mortgage given by the heirs to Faulkner, Kimball & Co. The heirs could convey no greater right to the real estate than they had under the statute. By the statute they did not take the right of the oratrix to a homestead and dower, only provisionally under that portion of sec. 2219, already quoted. Faulkner, Kimball & Co., and all intervening holders of the mortgage, besides the actual knowledge of the rights of the oratrix to a portion of the estate, took the same affected by the notice and knowledge which the land records of East Montpelier, and the probate records showed, as to the existence of the widow and her rights to the estate. The notice and knowledge thus furnished are ample to protect the oratrix's rights in the estate, without resorting to the knowledge which Mr. Heaton had when, as attorney of Faulkner, Kimball & Co., he took the mortgage. But knowledge of an attorney, especially when immediately communicated to his client, is the knowledge of the client. Besides, Faulkner, Kimball & Co. took the mortgage to secure an antecedently existing debt. They parted with nothing on the strength of the mortgage. Under the decision of *Austin* v. *Curtis*, 31 Vt. 64, this would not make them *bona fide* holders of the mortgage security for value, so as to cut off any equitable rights which the oratrix had to the premises mortgaged. The result is, that the oratrix is entitled to a decree, that the defendants pay to the oratrix the annuity now due, with interest from the time it fell due from time to time, and secure future pay-

ments thereof to the satisfaction of the Court of Chancery, upon which being done, the oratrix is to relinquish all rights which she as the widow of Walter Little otherwise would have under the law to his estate; and in default of compliance with the foregoing, then the oratrix is to have decree setting out to her a homestead and full dower of all the real estate of which Walter Little died seized, from that portion thereof not sold by the administrator *de bonis non,* and to have the rents and profits of the same since July 27, 1875, when the first installment of the annuity fell due, the same to be ascertained by a proper reference to a master; and the cause is remanded to the Court of Chancery, with a mandate modifying the *pro forma* decree to correspond with the views here expressed.

Some question has been made as to costs. We think that, notwithstanding the modification of the decree of the Court of Chancery, the oratrix is entitled to her costs against all the defendants except the administrator *de bonis non,* Dwinell, in the Court of Chancery and in this court. He is a proper party to the bill, and not entitled to recover costs. But as his connection with the case arises wholly by reason of his being administrator, and if costs were awarded against him, he would have the right to charge them to the estate, no costs are allowed against him.