No. 38,036

In the Matter of the Estate of Carl Neis, Deceased. PETER NEIS as executor of the Estate of Carl Neis, deceased, and PETER NEIS, ET AL., as beneficiaries under the will of Carl Neis, deceased, *Appellants,* v. ORA E. NEIS, *Appellee* and *Cross-Appellant.*

(225 P. 2d 110)

Opinion filed December 9, 1950.

*Charles A. Springer,* of Lawrence, argued the cause, and was on the briefs for the appellants.

*Robert Stone,* of Topeka, argued the cause, and *Richard B. Stevens* and *John W. Brand,* both of Lawrence, were on the briefs for the appellee and cross-appellant.

The opinion of the court was delivered by

SMITH, J.: This was a proceeding to determine the validity of an antenuptial contract and to determine the rights of the surviving widow in the assets of the estate of her deceased husband. The trial court upheld the contract and held the widow to be entitled to certain statutory rights. The executor and certain legatees have appealed and the widow has cross-appealed.

The executor named filed a petition for probate of the will of Carl Neis alleging testator died August 14, 1948, leaving some twenty-one devisees and at the time of death owned real property worth $40,000 and personal property worth $15,000; that he was named executor in the will and was a resident of Douglas county. He prayed for an order admitting the will to probate and naming him executor.

The will referred to a contract between testator and his wife, bequeathed her $15,000, left specific bequests to named persons and left the residue to his brothers and sisters and heirs of a deceased brother or sister and provided these heirs should take the share the brother or sister would have taken had they survived. The will was duly admitted to probate and on September 17, 1948, an inventory was filed as follows:

"Real estate ............................................. $54,187.00
Corporation Stock ....................................... 30,175.00
Bonds, mortgages and other written evidences of debt.......... 32,634.75
All other personal property ............................... 9,535.91

Total appraised value of estate.............. ...... $126,532.66"

On December 9, 1948, the widow filed her election to take under the law rather than under the will and on the same date filed her petition to set aside homestead and personal property under the statutes. In this she alleged that she was the widow; that there were no minor children and at the time of his death she and the testator occupied a described quarter section as a homestead; that it was then occupied as her homestead and she desired it to be set apart to her as a homestead and she selected certain personal property, including a described automobile and $750 to be allowed her from the estate in accordance with G. S. 1947 Supp., 59-403.

On December 16, 1948, the executor filed a petition to determine the rights of the widow in the estate under an antenuptial contract between her and the testator. In this he alleged that he was, in addition to being executor, one of the beneficiaries under the will. He pointed out the clause of the will bequeathing Ora $15,000 and a clause directing the executor to sell the property and to pay the bequests. He further alleged that on December 20, 1945, deceased and Ora entered into an antenuptial contract, which was still in full force and effect. He next referred to the petition to set aside homestead and personal property and to her election to take under the law and further stated that in his judgment all the property should be sold by him as directed in paragraph X of the will. He alleged that he could not carry out the terms of that paragraph until the court had determined the claim of Ora, the widow; that she and all the devisees were interested parties, as well as the Internal Revenue Department of the United States; that in accordance with the antenuptial contract Ora should receive $15,000 and no more and she was barred from claiming any homestead rights or other rights in the property with the exception of the $15,000 mentioned. He prayed for an order setting the case for hearing, declaring the antenuptial agreement to be in full force at that time and at the time of the death of the deceased and that Ora be barred from any rights in the estate with the exception of $15,000 and that her petition to set aside the homestead and personal property rights be denied. The antenuptial contract, to which reference has been made, was as follows:

"THIS INDENTURE, Made this 20 day of December, 1945, between Carl Neis of Eudora, Kansas, of the one part, and Ora E. Cooper of Lawrence, Kansas, of the other part.

"WHEREAS, a marriage is intended to be solemnized between said parties, and in view of the fact that after their marriage, in the absence of any agreement to the contrary, their legal relations and powers as regards property may, by reason of some change in their domicile, or otherwise, be other than those of their present domicile, or other than those which they desire to have apply to their relations, powers and capacities; and

"WHEREAS each of the parties hereto has disclosed to the other the full amount of all property owned by each of said parties:

"Now THIS INDENTURE WITNESSETH, that each of them, the said Carl Neis and Ora E. Cooper hereby agrees, covenants and declares it to be his or her desire that during their marriage each of them shall be and continue completely independent of the other as regards the enjoyment and disposal of all property, whether owned by either of them at the commencement of the

marriage or hereafter acquired, or coming to them or either of them during the marriage. And each of them hereby agrees and covenants with the other, in view and consideration of said proposed marriage, that so far as is legally possible by their private act and agreement, all the property belonging to either of them at the commencement of the marriage, or acquired by or coming to either of them during the marriage, shall be held and be enjoyed by him or her, and be subject to his or her disposition as his or her separate property in the same manner as if the said proposed marriage had never been celebrated. And if either party desires to sell or mortgage his or her property or any part thereof, the other agrees to join in said deed or mortgage without any consideration, other than the marriage herein referred to.

"And the parties hereto expressly further agree and covenant to and with each other, that upon the death of either, the survivor, shall not have and will not assert any claim, interest, estate or title, under the laws of any state, because of such survivorship, in or to the property, real, personal or mixed, or life insurance, of which such deceased party die seized or possessed, except as hereinafter provided: and such survivor hereby relinquishes to the heirs, devisees, administrators, executors and assigns of such deceased party, any and all of his or her claim, distributive share, interest, estate, or title, that he or she would be entitled to, as the surviving husband or wife respectively; and agrees upon demand, to make, execute and deliver to the heirs, devisees, administrators, executors and assigns of such deceased party any and all such claim, interest, estate, right or title, and upon demand to make, execute and deliver to the heirs, devisees, administrators, executors and assigns of such deceased party any and all acquittances, assignments, assurances, deeds, instruments and receipts, that may be necessary and required to effectually carry out and make effective, his or her agreements herein contained.

"It is distinctly understood and agreed between the parties hereto that if Ora E. Cooper shall remain with and be the wife of the other party, Carl Neis up until the date of his death then she shall receive from his estate the sum of Fifteen Thousand Dollars ($15,000.00), but if she does not remain with and be the wife of Carl Neis up until the date of his death then in that event she shall not receive said Fifteen Thousand Dollars ($15,000.00).

"The parties hereto have read the above and foregoing agreement and each of them knows the contents thereof, and fully understand all the terms and conditions contained in this contract.

"To the full and proper performance of all the foregoing agreements, covenants, and stipulations, the parties hereto, respectively bind themselves, their heirs, devisees, executors, administrators and assigns.

"In Witness Whereof, the said parties have hereunto set their hands and seals at Lawrence, Kansas, this 20 day of December, 1945.

"Carl Neis
"Ora E. Cooper."

A power of attorney given testator by Ora was attached to the contract. This provided as follows:

"Know All Men By These Presents, That I the undersigned, Ora E. Cooper of Lawrence in the county of Douglas, State of Kansas, have made,

constituted and appointed, and by these presents, do make, constitute and appoint Carl Neis of Eudora, in the county of Douglas, State of Kansas, my true and lawful attorney in fact, for me and in my name and stead, and to my use, to grant, bargain, sell or mortgage any and all property which he may own or hereafter acquire, or any part thereof, for such price and on such terms as to him shall seem meet, and for me and in my name to make, execute, acknowledge and deliver good and sufficient deeds of conveyance or mortgages for the same, with or without covenants of warranty, hereby giving unto my said attorney in fact, full authority and power to do everything whatsoever requisite or necessary to be done in the premises, as fully as I could or might do if personally present, hereby confirming and ratifying all that my said attorney in fact, shall lawfully do or cause to be done, hereunder.

"This power of attorney having been executed as part consideration for the marriage mentioned in the contract hereto attached, shall not be subject to revocation.

"WITNESS MY HAND, this 20 day of December, 1945.

"Ora E. Cooper."

On January 10, 1949, the executor filed his answer to Ora's petition to set aside the homestead and personal property. In this he referred to an antenuptial agreement; stated that it was full force; alleged that by reason of it Ora was barred from having the homestead and personal property set apart; stated that it barred her from making any election to take under the laws of the state of Kansas or any other state concerning descents and distribution with the exception that she was to receive in accordance with the terms and conditions of such agreement the sum of $15,000.

He prayed for an order denying the petition of Ora to set apart the homestead and personal property.

On January 10, 1949, each of the beneficiaries except Ora and the executor filed his separate answer in which each referred to the antenuptial contract and said it barred Ora from receiving anything from the estate except the $15,000.

On February 4, 1949, Ora filed her amended answer to the executor's petition. She stated in this that she and the testator were married on December 22, 1945, and on December 20, 1945, deceased suggested to her that they have prepared and executed the antenuptial contract. She alleged that there was no discussion as to its terms; that she went to a lawyer's office and that in a consultation in the lawyer's office the lawyer dictated an agreement; that the testator told the lawyer to provide in the agreement to give her twelve or fifteen thousand dollars; that they left the office and when they returned the document was written and they signed it; that she took no part in the negotiations with reference to the contract; that the

statement and agreement reading "And whereas each of the parties hereto had disclosed to the other the full amount of all property owned by each of said parties" was not a correct statement; that testator never had disclosed to her the amount of his property; that her estate was nominal; nor did testator ever tell her of the extent of his estate; that no statement was made in the presence of the lawyer that he owned any amount of real or personal property; that she did not know he owned $70,000 or that the real estate owned by him was of the value of $50,000. She alleged that she was not acquainted with the provisions of the Kansas statutes with reference to the right to inherit from a deceased spouse but that she had been a resident of Missouri and did not know the laws of Kansas and she was not informed of her rights or given any opportunity to consult a lawyer. She alleged she was not advised by testator that he had executed the will which had been offered for probate and the testator did not ask her to consent to its terms; that she was deceived by the concealment as to the extent of the property owned by testator and had she known the extent of his property and the provisions of the statutes of Kansas she would not have entered into the contract. She prayed that the contract be set aside; that she be allowed to take under the law instead of under the will; that she be allowed the statutory provisions due a widow in reference to a homestead and statutory allowances.

By these pleadings two proceedings were put at issue—first, the application by Ora for an order awarding her the use of the homestead and other allowances and exemptions due a widow and half of all the property of which testator died seized; second, a petition by the executor setting up the antenuptial contract and asking for an order holding it valid and that the widow be required to accept the $15,000 provided in it given her by the will of Carl.

On February 10, 1949, all of the matters were put in issue by the pleadings and were heard by the probate judge. The evidence furnished was taken in shorthand and reduced to writing. The court found that it was agreed that all the evidence should be heard in one hearing. The court further found that the antenuptial contract entered into between decedent and Ora on December 20, 1945, was a valid antenuptial contract and was in full force and effect and Ora was bound by it and her election not to take under the will was unenforceable and of no effect. The court further found that notwithstanding the antenuptial agreement Ora was entitled to have set apart to her the 160 acres which she asked to have set apart to her,

as well as personal property, wearing apparel, family library, pictures, musical instruments, furniture, household goods, utensils and implements used in the home, one automobile, fuel or anything for her support for a year, and the sum of $750.

Judgment was entered by the probate court accordingly.

In due time Ora appealed to the district court from that part of the order holding the antenuptial agreement to be valid. The other devisees and the executor appealed from that part of it allowing the petition of Ora for allowances and the homestead. The district court heard the appeal on the written transcript of the evidence that had been made following the hearing in the probate court.

The district court found that the antenuptial contract was fairly and understandingly made, was a valid agreement and in full force and effect and the election of Ora to take under the law was inoperative. The court further found that notwithstanding the antenuptial contract, Ora was entitled to have set apart to her the quarter section mentioned as her homestead and was also entitled to have set apart to her from the personal property of which decedent was possessed at his death the wearing apparel, family library, pictures, musical instruments, furniture and household goods, utensils and implements used in the home, one automobile, provisions and fuel necessary for Ora's support for one year and the sum of $750 as her statutory allowance of personal property as the widow of decedent.

Ora has appealed from that part of the judgment that held the contract to be valid. The executor has appealed from as much of it as held Ora to be entitled to have the homestead and personal property set off to her.

We first consider Ora's appeal. At the outset she points out to us the district court heard the appeal on the transcript of evidence taken in probate court. She argues that under such circumstances we on appeal will review the evidence and will make our own findings and conclusions therefrom. She is correct in this. (See *In re Estate of Kemper*, 157 Kan. 727, 145 P. 2d 103; and *Protheroe v. Davies*, 149 Kan. 720, 89 P. 2d 890.)

We shall, therefore, examine the evidence. The rule is that an antenuptial contract is valid and binding, if freely and understandingly made, and there is no fraud or deceit. Our problem is to decide whether the evidence is such as to compel a finding that this contract does not meet that test. As determiners of the fact,

we must consider all the surrounding circumstances. At the outset, Ora charges she did not know and was not advised of even the approximate extent of the property of her husband-to-be. She charges this was fraud by concealment.

It is true she testified she was not told of the amount of her husband's worth. She could testify and her husband's lips are sealed. There is a bit of evidence on this point, however, from the lawyer who drew the contract. He testified that when the three were going over it and reached the point where it stated the parties had told each other what property each had he asked them if they had done that and decedent said "I told her what I had but I am not interested in what she has." In reference to this bit of evidence, she testified the statement in the contract "all the parties hereto have disclosed to the other the full amount of all property owned by each of said parties" was not true. She testified "I just supposed Carl would tell me later what he had. I figured he thought it wasn't any of Mr. Riling's business so he would tell me later, but he never did." At any rate, this record does not disclose that she did anything more than sit mute when decedent stated to his lawyer in her presence that he had made a disclosure to her. There is another interesting circumstance bearing on this point in her testimony. She testified that she had known decedent about four years before they were married; that she knew he lived on a farm but did not know that he owned it; she just supposed he did; that she and her former husband went around socially with decedent and she guessed her former husband borrowed money from decedent. These four years were evidently spent there in the same neighborhood with decedent. Under all these circumstances, it hardly seems reasonable that she would not have learned that decedent was a man of substantial means, at least. Then there is the circumstance of her signing the income tax returns for 1945 and 1947, and having no knowledge of their contents. This hardly seems reasonable. We cannot overlook the testimony of the barber. When Ora told him she was going to marry Carl he said "that old boy is pretty well fixed." He further testified she said in reply "Maybe you think I don't know that." All these circumstances weigh quite heavily with us. We will consider them later together with another phase of the case.

Ora argues that since there was a confidential relationship between her and decedent the duty was upon him to make a full and complete disclosure of the property owned by him and that in an

action such as this to enforce an antenuptial contract the burden is upon him to show that he did make a complete and full disclosure. She bases that argument upon the fact that the provision made for her in the antenuptial contract was disproportionate to his means. In this connection she points out that decedent's estate at the time of execution of the contract was well over $100,000 and that he agreed to give her in the contract only $15,000. There are some circumstances which we feel compelled to consider, however, in this connection.

In the first place, the lawyer who drew the contract testified that when they all three discussed the payment of the $15,000 she said:

"Well, in addition, if Carl should die before I do, in addition to the Fifteen Thousand Dollars, I'd have a home there up until the time of his death and I would have a place to raise chickens and accumulate something in addition to the fifteen thousand."

This sounds like the statement of a woman who was happy to know she was to have a home where she would be well treated and allowed to carry on the sort of an enterprise most farm wives carry on, that is, the raising of chickens. We have, too, the evidence of the lawyer, of a statement of decedent that he could make any gifts he wished to Ora during her lifetime and the contract would still be valid. In this connection we must consider that Ora had not had too easy an existence up to then. She had been married twice and had a daughter by one of her husbands. She had divorced her first husband and received no estate from him. Her second husband had died and had left her only a small estate, so at the time of the execution of the contract she had $2,000. At that time she was earning $37 a week and she was 53 years old.

From the story of her lifetime the $15,000, which she was to receive at Carl's death, together with a home and an opportunity to raise chickens, and the care every husband is bound by law to give his wife was a welcome change from her existence up to that time working for $37 a week. We find nothing sinister about the fact that decedent employed a lawyer to write the contract nor do we give much weight to the fact that decedent told Ora on Sunday night, December 20, before they were married the following Thursday, that he wanted to enter into an antenuptial contract with her. The fact in and of itself does not give rise to any doubt as to his good faith.

There is still another persuasive circumstance on this point. The lawyer who drew up the contract testified as to a conversation

with Ora in the hospital after the death of decedent. She was badly injured and had requested the lawyer to come out there. He testified at that time she was worried and expressed concern about whether the family would let her have the stove, the icebox and the chickens that were on the home place. It appears she claimed decedent had given her these things. We have already stated the conversation about the chickens at the time the contract was signed. She also expressed concern about whether she would be permitted to stay on the home place until she recuperated. This sounds more like the action and talk of one who realized the force and effect of the contract in question than of one who was preparing to resist the enforcement of the contract. It leads us to believe the idea about claiming the contract was not freely and understandingly executed was an afterthought. This conversation furthermore is entirely consistent with the conversation at the time the contract was executed. There is the added circumstance that decedent's will was executed for some time before his death, she read it and knew its provisions and said nothing.

When an appellate court examines a record and makes a finding of fact it must set down the reasons impelling it to reach such a finding. Juries and trial courts are spared that burden. We have read this record carefully and have reached the conclusion the trial court made the only finding it could have made on this point. To find otherwise would be to establish a precedent that in the case of an antenuptial contract after one of the parties to it was dead the other party could tell any story and thereby strike the contract down. The only recourse triers of issues of fact have in a case such as that is to weigh the circumstances carefully. In *Hafer v. Hafer*, 33 Kan. 449, 6 Pac. 537, we said:

"The mere fact that he may not have disclosed his assets and liabilities in detail to her, will not, in the absence of anything showing fraud or deceit, invalidate the contract, nor will it raise a presumption of fraudulent concealment; and especially is this so where the terms and provisions of the contract are so manifestly fair and reasonable as in this case."

*Hafer v. Hafer,* supra, is the leading case in this state on the question of the validity of antenuptial contracts. Later in *Watson v. Watson,* 104 Kan. 578, 180 Pac. 242, we held:

"An antenuptial contract must be upheld unless some fraud, deceit or unreasonable inadequacy or disproportion appears. If the latter appear, the presumption of fraud is raised, and the burden is on the husband or those claiming under him to show that the wife was fully informed as to his property."

See, also, *In re Estate of Cantrell,* 154 Kan. 546, 119 P. 2d 483, where we held:

"Where it appears that an antenuptial contract was understandingly made and freely executed, and where there is an absence of anything showing fraud or deceit, the mere fact the intended husband did not disclose in detail to the intended wife the nature, extent and value of his property will not, of itself, invalidate the contract or raise a presumption of fraudulent concealment, and if from a consideration of all the facts concerning the situation of the parties, such as their respective ages, family conditions, property rights, etc., at the time the contract was made the trial court concludes the intended wife was not overreached, the contract should be sustained."

(See, also, *In re Estate of Place,* 166 Kan. 528, 203 P. 2d 132; *In re Estate of Schippel,* 169 Kan. 151, 218 P. 2d 192.)

We conclude that the court did not err in holding the antenuptial contract was freely and understandably executed and was valid and in force at the time of the death of the decedent.

We go now to the appeal of the executor from so much of the judgment as sets aside the homestead and personal property to Ora. The language of the contract on this question will be repeated here even though it has heretofore been set out in this opinion. It is as follows:

"And the parties hereto expressly further agree and covenant to and with each other, that upon the death of either, the survivor shall not have and will not assert any claim, interest, estate or title, under the laws of any state, because of such survivorship, in or to the property, real, personal or mixed, or life insurance of which such deceased party die seized or possessed, except as hereinafter provided: and such survivor hereby relinquishes to the heirs, devisees, administrators, executors and assigns of such deceased party, any and all of his or her claimed distributive share, interest, estate, or title, that he or she would be entitled to, as the surviving husband or wife respectively; and agrees upon demand, to make, execute and deliver to the heirs, devisees, administrators, executors, and assigns of such deceased party any and all such claim, interest, estate, right or title, and upon demand to make, execute and deliver to the heirs, devisees, administrators, executors, and assigns of such deceased party any and all acquittances, assignments, assurances, deeds, instruments, and receipts, that may be necessary and required to effectually carry out and make effective, his or her agreements herein contained."

If Ora could waive her homestead rights in the home place by an antenuptial contract the above language is plain enough that she did so. However, we have said that she could not do it in the same cases that have heretofore been cited. In *Hafer v. Hafer,* supra, we held that the homestead of the parties and occupied by his widow and minor child after his death could not be partitioned until the widow remarried or the child reached maturity notwithstanding the antenuptial contract and even though the minor child asked that it be

partitioned. We placed the decision on the fact that what constituted homestead rights was not alone for the husband and wife or for either of them, but as a protection for the family. We remarked that strict constitutional and statutory regulations have been placed upon its alienation. We said:

"In view of these considerations, and of the policy of the law which has been so frequently stated by this court, we think the right of occupancy of the homestead by the family of the intestate is not affected or disturbed by the antenuptial contract."

We have followed the rule consistently since. See *Watson v. Watson,* 106 Kan. 693, 189 Pac. 949, where we held:

"The restrictions of the constitution and statutes touching the alienation of a homestead are for the protection of the family, and cannot be varied or avoided by an antenuptial contract providing that in case the wife survives the husband she is to have no part in his estate. Hence, so long as such surviving widow remains unmarried she may occupy the homestead regardless of such contract."

See, also, *In re Estate of Place,* supra. This is a familiar case and we took some pains to go over the same. After doing so we said:

"There is no doubt that under the cases above noted, homestead rights could not be cut off by the antenuptial contract under consideration. Review of cases dealing with postnuptial contracts is unnecessary."

Indeed the executor's argument in this connection asks us to reexamine the authorities and change the rule. We do not care to do that.

A somewhat different situation presents itself as to that part of the court's judgment setting aside the personal property. That is a statutory matter. In *In re Estate of Place,* supra, we considered that question and held that the widow of decedent could waive her right to the statutory allowances although we held that under the contract being considered she had not waived it. (See, also, *In re Estate of Fawcett,* 163 Kan. 448, 183 P. 2d 403 and *Burns v. Spiker,* 109 Kan. 22, 202 Pac. 370.) A fair interpretation of this contract leads us to the conclusion that Ora did waive her statutory allowance of personal property here.

It follows that so much of the judgment of the trial court as sets aside the personal property to Ora cannot stand.

The judgment of the trial court holding the antenuptial contract to be a valid contract is affirmed. So much of the judgment as holds that the homestead should be set off to Ora is affirmed. So much of the judgment as holds the personal property should be set off to Ora is reversed.