No. 46,206

In the Matter of the Estate of Wilber E. Broadie, Deceased. ETHEL C. BROADIE, (Opal Barnes McMeen, Executrix of the will of Ethel C. Broadie, Deceased, substituted,) *Appellee,* v. WENDELL E. BROADIE, *Executor-Appellant.*

(493 P. 2d 289)

Opinion filed January 22, 1972.

*Dale M. Stucky* and *Williard B. Thompson,* both of Fleeson, Gooing, Coulson and Kitch, of Wichita, argued the cause, and *Lawrence E. Christenson* and *Marion P. Mathew,* both of Winfield, were with them on the brief for the appellant.

*Donald Hickman,* of Arkansas City, argued the cause, and *Lyle W. Loomis,* of Winfield, and *Kirke W. Dale* and *David Mills,* both of Arkansas City, were with him on the brief for the appellee.

The opinion of the court was delivered by

FROMME, J.: This appeal involves the validity of an antenuptial contract and a consent to a will. The contract and the consent were set aside in the court below. The executor of the will of the deceased husband has appealed.

Wilber E. Broadie, a lawyer, lived in Winfield, Kansas during a large part of his adult life. He married and raised three children by his first wife. His first wife died in 1959.

Ethel C. Barnes, a housewife, lived in Winfield for over 50 years. She married and raised eight children by her first husband. Her first husband died in 1943.

Wilber and Ethel had been acquainted for many years. They attended the same church. They were lonely. In December, 1960, their acquaintanceship ripened into a closer friendship. Wilber was 81 years old. Ethel was 76 years old. They kept company together for over a year and during that time a marriage settlement for Ethel was discussed by them. They were married on February 18, 1962. Thereafter they traveled widely and enjoyed each other's company for seven years.

At the time of this second marriage, Wilber E. Broadie was in comfortable financial circumstances. His net worth was roughly $180,000 and his property included farm and city real estate, securities, cash and some personal property. Ethel C. Barnes was in modest circumstances. She lived in a house owned by one of her sons. She owned a life estate in 145 acres of land in Oklahoma and had a small savings account. She was receiving a small social security check and her income from the Oklahoma land amounted to about $500 annually.

Prior to their marriage the parties privately discussed and agreed upon a marriage settlement for Mrs. Barnes of $25,000 plus homestead rights in the Broadie home in Winfield. This would permit the intended wife to live in the home after Mr. Broadie's death and she would have possession and use of the furniture, fixtures and equipment located therein. An antenuptial contract dated February 1, 1962, was drawn by Wilber E. Broadie and signed by the couple. It provided for the marriage settlement and each waived all rights in the property of the other either in their lifetimes or by way of inheritance.

The will of Wilber E. Broadie was also drawn by him. It was dated, signed and witnessed on February 27, 1962, nine days after the wedding ceremony was performed. The will contained the following provision for Ethel C. Broadie:

"Second; I give and Bequeath to my wife, Ethel C. Broadie, the sum of Twenty-Five Thousand ($25000.00) Dollars together with homestead rights in the home at 440 College, Winfield, Kansas, and the use of the furniture, fixtures, equipment and utensils therein during her use and occupancy of said premises as my widow should she survive me."

A consent to the will by Ethel C. Broadie was attached, signed and witnessed. It reads:

"I, Ethel C. Broadie, wife of Wilber E. Broadie, who executed the foregoing instrument as his last will and testament, do hereby declare that I have read the same and understand the provisions thereof and the rights secured to me by law and I hereby consent to said will and accept the provisions therein made for me in lieu of any and all rights and allowances which would otherwise accrue to me under the law. Witness my hand this *27th* day of February, 1962."

During the seven years that followed no question appears to have been raised by Ethel C. Broadie concerning the provisions of the marriage settlement or the will. Wilber made gifts *inter vivos* to his wife of securities and money totaling roughly $15,000. During this period she continued to handle her own affairs, kept separate bank accounts and her attorney, Lyle W. Loomis, assisted her in obtaining an oil bonus payment on her Oklahoma land of $4,800.

Wilber E. Broadie died on December 31, 1968. His will was filed for probate. The antenuptial agreement was apparently attached to the petition for probate as an exhibit. The petition was filed by the son of Wilber E. Broadie who was named executor in the will.

Ethel C. Broadie then launched her attack against the contract and the consent to the will. On transfer from the probate court,

the district court set aside the antenuptial contract and the consent to the will. This appeal followed.

Ethel C. Broadie died on October 5, 1970, while this appeal was pending. Opal Barnes McMeen, executrix of the last will and testament of Ethel C. Broadie, was substituted for Ethel C. Broadie, as appellee on order of this court. The contest continues in this court between the two estates of the original parties to the agreement.

A contention is made in the appellant's brief that the case was prematurely decided by the district court on opposing motions for summary judgment. Claims of error not listed in the statement of points will not be entertained by this court on appeal. (Supreme Court Rule No. 6 (d), 205 Kan. xxix.)

The record on appeal conclusively shows the case was submitted for final decision by stipulation on a printed record. The agreed record below and the record on appeal consists of pleadings, depositions, answers to interrogatories, admissions and affidavits. The nature of the record below is significant on appeal. Normally oral testimony is taken in the district court and when the case is submitted to the court without a jury the district court becomes the trier of the facts. In such case the appellate court accepts the facts as determined by the trial court. However, when a case is submitted to the district court on a printed record that rule does not apply.

When the findings of fact made by the district court are based upon evidence in printed form such as documents, depositions and interrogatories, no oral testimony having been heard, it then becomes the duty of this court on appeal to decide for itself what facts are established and the conclusions to be reached. This it should do substantially as it would in an original action. (*In re Estate of Kemper*, 157 Kan. 727, 145 P. 2d 103; *In re Estate of Neis*, 170 Kan. 254, 225 P. 2d 110; *Watson v. Dickey Clay Mfg. Co.*, 202 Kan. 366, 450 P. 2d 10.) We will follow the rule in this case.

There is some argument between the parties over the date the antenuptial agreement was signed. The written agreement is dated February 1. The deposition of Ethel C. Broadie indicates the parties were married on February 18, and the agreement was signed three or four days thereafter. No third parties were present when it was signed and Wilber E. Broadie is now dead. However, it is clear from the record that the marriage settlement was discussed and agreed upon before the marriage took place. It was reduced to writing and executed within a few days after the wedding, if not

before. The date of signing the agreement which reduced the settlement to writing is not signifiant under such circumstances.

The validity of the antenuptial agreement is questioned because Mr. Broadie indicated he owned securities generally of the value of $75,000 and it is now shown the securities he owned at that time were worth about $125,000 on the market. No claim is made that Mr. Broadie intentionally misrepresented any particular security or attempted to conceal the same from his wife.

Antenuptial agreements are recognized as valid in this state and two parties contemplating a marriage have a right to make a binding agreement of this nature if the agreement is just and adequate in its provisions and is free from deceit and fraud. (*Hafer v. Hafer*, 33 Kan. 449, 6 Pac. 537; *In re Estate of Neis*, supra; *In re Estate of Cantrell*, 154 Kan. 546, 119 P. 2d 483.)

Generally the relation of the man to the woman he is about to marry is a confidential relation which arises from the glow of that tender, trusting closeness which comes from courtship ending in a mutual declaration of love resulting in marriage. The man in such case or his successors may later carry a burden of showing the antenuptial agreement entered into by the betrothed couple was fairly and understandingly made after a disclosure of his financial circumstances. In such cases the provision made for the intended wife must be just and adequate. Whether an antenuptial agreement is just and adequate depends upon the facts and circumstances of each case.

In the present case Wilber E. Broadie was 81 years of age. His intended wife was 76 years of age. Both parties had children by previous marriages and their children had anticipatory claims upon their parents' bounty in event of death. Both parties were in the last eight years of their lives when the marriage was contemplated. Wilber's total estate at that time was valued at only $180,000. A marriage settlement of $25,000 plus homestead rights and allowances under all the circumstances appears just and adequate.

Wilber E. Broadie, although a lawyer, had retired from practice in 1961. He never represented Ethel in any business matters either before or after the marriage. He did prepare the agreement and the will. However, there is no contention that these instruments failed to express the agreement of the parties. The district court found from the facts that these parties occupied the highest "fiduciary" relationship. In a legal sense the use of the term "fiduciary"

is not accurate. (See *In re Estate of Carlson,* 201 Kan. 635, 648, 443 P. 2d 339.) No lawyer-client relationship existed. Both before and after the marriage Ethel took care of her own property in Kansas and in Oklahoma. Prior to her husband's death she obtained a substantial oil bonus payment of $4,800 on her interest in the Oklahoma land. Her attorney in that matter was Lyle W. Loomis.

The relationship generally arising between the parties on their betrothal is one of confidence and reliance. This confidential relationship may make it necessary for the husband's successors to establish no outright fraud or intentional misrepresentation was exerted by the intended husband when the antenuptial agreement was entered into and that its provisions were just and adequate. In this case the widow clearly indicated in her deposition that no outright fraud or intentional misrepresentation was claimed by her. The only basis she claimed for establishing the invalidity of the antenuptial agreement was a difference in the value of the securities from which her $25,000 marriage settlement was to come. Wilber told her his securities were worth $75,000 when in fact a detailed inventory of these securities at the time of the marriage would have disclosed their market value as $125,000. It may be inferred that Wilber valued them at his cost. In any event she knew the exact amount in dollars that she was to receive on his death and there is no evidence in the record of any attempt to conceal property from the intended wife. In addition during the seven years after the marriage and before Wilber's death he made gifts to his wife of stock and money totaling about $15,000.

The facts in this case raise a question as to the nature and extent of the disclosure necessary before an antenuptial agreement is valid.

Some courts in other jurisdictions, in the spirit of the women's liberation movement, have held the confidential relationship which imposes the duty to disclose property is not present under circumstances similar to those in this case. Those courts hold that the duty to disclose is not present when the intended marriage is one of convenience. These courts reason that the business judgments of the parties are not subject to being clouded by the prehymeneal ardor and tenderness which ordinarily is assumed to be present when a man and woman are about to embark upon matrimonial seas. (See cases collected in Anno. 27 A. L. R. 2d 883 at p. 889.)

We find no cases in Kansas where such reasoning has been employed. However, this court does consider all circumstances sur-

rounding the marriage including the age of the parties, prior marriages, the claims of their separate families and the amount of their respective estates. The mere fact that the intended husband did not disclose in detail to his intended wife the nature, extent and value of his property will not, of itself, invalidate the contract or raise a presumption of fraudulent concealment if the wife does have a general understanding of the nature and extent of his property. (*In re Estate of Cantrell*, supra; *In re Estate of Schippel*, 169 Kan. 151, 218 P. 2d 192.)

In her deposition Ethel C. Broadie agreed that the marriage was one of convenience. The parties had lived in the same city for many years. They had attended the same church and had been acquainted for many years. They lived in a relatively small city. The intended wife had a general knowledge of the nature and extent of the property interests owned by the intended husband.

Under the facts of the present case we hold that a detailed disclosure of the property was not required to show an intelligent understanding of the property of the intended husband.

After considering the foregoing circumstances we cannot agree with the district court that the antenuptial agreement was a result of concealment, overreaching or fraud on the part of Wilber E. Broadie. Other than the wife's bare statements as to an understatement of value, after her husband's lips were sealed by death, there simply is no evidence to sustain such a conclusion. When a party voluntarily and freely signs an antenuptial contract knowing full well what she is to receive therefrom and thereafter seeks to refute it on the ground of concealment, overreaching or fraud, such much be made to appear clearly before the contract may be declared invalid. (*Shriver v. Besse*, 163 Kan. 402, 183 P. 2d 407; *In re Estate of Schippel*, supra.)

The action of the district court in setting aside the antenuptial agreement and consent to the will rests heavily upon its finding that Ethel C. Broadie entered into the agreement without being furnished independent advice and counsel.

If outright fraud or misrepresentation is established the agreement is void regardless of independent advice. Outright fraud or misrepresentation must be made to appear clearly before a contract voluntarily entered into may be declared invalid. (*In re Estate of Ward*, 178 Kan. 366, Syl. ¶ 2, 285 P. 2d 1081.) No outright fraud or intentional misrepresentation was shown in the present case.

Absent outright fraud or intentional misrepresentation two persons may enter into a valid and binding antenuptial contract without any independent advice if the contract is fairly and understandingly made and if it is just and adequate in its provisions. (*In re Estate of West,* 194 Kan. 736, 402 P. 2d 117.)

If a presumption of fraud is raised by a showing that the terms of the antenuptial agreement appear unjust or inadequate under the circumstances and that the intended wife had no understanding of the nature and extent of the intended husband's property then evidence of independent advice and a showing of lack of any confidential relationship may be necessary to overcome that presumption of fraud.

It was said in the case of *In re Estate of Carlson,* 201 Kan. 635, 443 P. 2d 339:

"The rule of independent advice is applicable only under circumstances where the evidence warrants it. Our decisions do not require application of the rule where the beneficiary or party upon whom is cast the burden of proof presents substantial evidence that the gift, deed or contract was made in good faith, not induced by undue influence, and for a valuable consideration. . . ." (Syl. ¶ 6.)

In *Frame, Administrator v. Bauman,* 202 Kan. 461, 449 P. 2d 525, it was held:

"Where good faith has been established on the part of one who benefits from a transaction and no undue influence has been exerted by him, and where the transaction is shown to have carried out the true and freely formed intentions of the party conferring the benefit, the law does not stigmatize the transaction as fraudulent and void simply because a confidential relationship may exist between the parties." (Syl. ¶ 6.)

In the present case the facts and circumstances do not raise a presumption of fraud. Considering the age of the parties at the time this antenuptial agreement was executed we believe the marriage settlement for the intended wife of $25,000 plus the homestead rights in the Broadie home was just and adequate under all the circumstances. We believe that the agreement was fairly and understandingly made by the intended wife and that she full well knew what she was to receive as a result of this marriage of convenience. Any claim of inadequacy of the settlement or overreaching by the intended husband is weakened by the gifts *inter vivos* totaling over $15,000 which she received during the seven years the parties were married.

It is argued the consent to Wilber's will was ineffectual by reason

of the circumstances surrounding the execution. What has been said with respect to the execution of the antenuptial contract, taken as a whole, might be applied to this argument. There is another reason, however, why this argument with respect to the consent is without merit.

When an antenuptial agreement is under attack the primary inquiry is whether the provision for the intended wife is reasonable and adequate under the circumstances, free from fraud or overreaching, and understandingly made. Such contracts are made when both parties are unmarried. Neither of them at the time has any rights in the property of the other. They are made upon a different basis than are consents by wives to their husbands' wills.

In the case of *In re Estate of Schippel*, supra, it was pointed out:

". . . The consideration of such an [antenuptial] agreement is the contemplated marriage, and the parties, for such consideration, simply agree in advance of marriage upon a different rule as to property rights than the statutory rule. The statute providing that a husband shall not will away more than one-half of his property without the written consent of his wife has no application here. . . ." (169 Kan. 151, 166.)

Under the facts and circumstances of the present case we believe that the validity and binding effect of the widow's consent to the will depends upon the validity of the antenuptial agreement. There is no contention that the will failed to assure Ethel C. Broadie of the property agreed upon in the antenuptial agreement. Since the agreement was valid and binding and the will carried out the terms of that agreement no purpose would be gained by a discussion of the requirements of a valid consent to a husband's will. A valid and binding antenuptial agreement controls the disposition of the widow's portion of the husband's estate regardless of the widow's consent to her husband's will. (See, *In re Estate of Ward*, supra, and *In re Estate of West*, supra.)

In light of what has been said we conclude the antenuptial contract between Wilber E. Broadie and Ethel C. Barnes dated February 1, 1962, was fairly and understandingly made, was just and equitable in its provisions and not obtained by fraud or overreaching. Therefore, the judgment of the district court is reversed and the cause is remanded with instructions to set aside its judgment and enter judgment in favor of appellant.

It is so ordered.