William Wesley WILLIAMS, Jr., Independent Executor, et al., Petitioners,

v.

Mildred Disch WILLIAMS, Respondent.

No. B–6738.

Supreme Court of Texas.

May 31, 1978.

Rehearing Denied July 19, 1978.

Hooper, Robinson & Moeller, Karl H. Moeller and Malcolm Robinson, Austin, for petitioners.

Charles G. Trenckmann, Austin, for respondent.

McGEE, Justice.

The question presented by this cause is whether a premarital agreement to waive the constitutional and statutory rights of a surviving spouse to a homestead and other exempt property is valid. The trial court held such an agreement to be valid. The court of civil appeals reversed the judgment. 548 S.W.2d 492. We reverse the judgment of the court of civil appeals and affirm that of the trial court.

William Wesley Williams, Sr., and Mildred Disch Lawrence were married on September 9, 1973. Both parties had children by previous marriages and both brought substantial property into this marriage. Four days before their marriage, the parties executed a premarital agreement. The basic agreement containing the provisions relative to the waiver of the homestead right and right to have exempt property set aside to the survivor provided:

"Whereas the parties desire that all property now owned or hereafter acquired by each of them shall, for testamentary disposition, be free from any claim of the other that may arise by reason of their contemplated marriage,

"It is therefore agreed:

"1. *Property to be separately owned.* After the solemnization of the marriage between the parties, each of them shall separately retain all rights in his or her own property, whether now owned or hereafter acquired, and each of them shall have the absolute and unrestricted right to dispose of such separate property, free from any claim that may be made by the other by reason of their marriage, and with the same effect as if no marriage had been consummated between them."

A supplemental agreement was simultaneously executed and incorporated into the basic agreement. It disclosed the properties that each spouse would bring into the marriage, set forth certain guidelines concerning living and other incidental expenses to be incurred during the marriage, and further provided:

"5. All income from the separate estate of each party, including dividends, interest, rents and salaries, and any increases, sales proceeds, reinvestments or changes in said separate estate, shall remain under control of the party receiving the same and shall be deposited in such party's separate account. It is the intent of the parties that such income, except for the personal living expenses hereinabove set forth, shall remain the separate property of each party."

The marriage lasted but 141 days. Shortly after the parties were married, Mr. Williams became ill and died on January 29, 1974. He died testate and his sole devisees were his children, William Wesley Williams, Jr. and Geneva W. Canion, who are the petitioners in this cause. Approximately one year after the death of their father, and relying on the executed premarital agreement, they requested possession of the residence, the household furnishings therein, and a 1971 Chrysler automobile. It is undisputed that the property sought had been the separate property of the deceased and had been devised to the petitioners. Mildred Williams refused to abide by the premarital agreement, choosing instead to claim her rights as a surviving spouse. Tex.Const. art. XVI, § 52; Tex.Prob.Code Ann. §§ 271, 272, 284 (1956).

As a result of Mrs. Williams' refusal to vacate the property, the children filed this suit for declaratory judgment. The case was withdrawn from the jury and the trial court rendered judgment in favor of the children. The trial court held that the portion of the premarital agreement by which Mrs. Williams relinquished her constitutional and statutory rights to the homestead was valid and binding on her. The court then ruled that the agreement was void to the extent that it provided that income or other property acquired during marriage should be the separate property of the party who earned or whose property produced such income or acquisition. But the trial court held that the valid and void provisions of the agreement were severable and ordered that the children recover possession of the residence, all personal property belonging to their father at the time of his death, and the Chrysler automobile.

Article XVI, section.52 of the Texas Constitution provides that the homestead shall not be partitioned among the heirs of the deceased during the lifetime of the surviving husband or wife, or so long as the survivor may elect to use or occupy the same as a homestead.[1] This is sometimes referred to as the probate homestead. O. Speer, Texas Family Law § 36:62, at 208 (5th ed. 1977). This homestead right of the survivor has been held to be one in the nature of a legal life estate or life estate created by operation of law. See Sparks v. Robertson, 203 S.W.2d 622 (Tex.Civ.App.—Austin 1947, writ ref'd); White v. Blackman, 168 S.W.2d 531 (Tex.Civ.App.—Texarkana 1942, writ ref'd w. o. m.); Petrus v. Cage Bros., 128 S.W.2d 537 (Tex.Civ.App.—San Antonio 1939, writ ref'd); Comment, The Widow's Exemption in Texas, 25 Baylor L.Rev. 346, 347 (1973). The Probate Code requires that the probate homestead and certain exempt personal property[2] be set aside to the surviving spouse. Tex. Prob.Code Ann. §§ 271, 272, 283, 284 (1956). These rights are provided by law for the protection of the family and to secure a home for the surviving spouse. Therefore, we must decide whether these rights may be waived by a premarital agreement.

The statutory authorization for premarital agreements in Texas is section 5.41

---

1. Tex.Const. art. XVI, § 52 reads as follows:
   "On the death of the husband or wife, or both, the homestead shall descend and vest in like manner as other real property of the deceased, and shall be governed by the same laws of descent and distribution, but it shall not be partitioned among the heirs of the deceased during the lifetime of the surviving husband or wife, or so long as the survivor may elect to use or occupy the same as a homestead, or so long as the guardian of the minor children of the deceased may be permitted, under the order of the proper court having the jurisdiction, to use and occupy the same."

2. Tex.Rev.Civ.Stat.Ann. art. 3836 (Supp. 1976–77).

of the Family Code.[3] This statute should be construed as broadly as possible in order to allow the parties as much flexibility to contract with respect to property or other rights incident to the marriage, provided the constitutional and statutory definitions of separate and community property or the requirements of public policy are not violated. *See generally* O. Speer, Texas Family Law § 16:5, at 192 (5th ed. 1976); McKnight, *Commentary to the Texas Family Code*, Title 1, 5 Tex.Tech.L.Rev. 281, 374–76 (1974).

Mrs. Williams argues that the policy of the law favoring the security of the widow by preventing an improvident relinquishment of the homestead, or other similar rights, is paramount to the policy of the law favoring flexibility in premarital agreements. Decisions from Kansas and North Dakota support this view. *In re Neis' Estate*, 170 Kan. 254, 225 P.2d 110 (1950); *Swingle v. Swingle*, 36 N.D. 611, 162 N.W. 912 (1917). The weight of authority and the better rule, however, allows the premarital waiver of these rights. *See, e. g., Smith v. Tang*, 100 Ariz. 196, 412 P.2d 697 (1966); *In re Howe's Estate*, 81 Cal.App.2d 95, 183 P.2d 329 (Dist.Ct.App.1947); *In re Scwartz's Estate*, 79 Cal.App.2d 308, 179 P.2d 868 (Dist.Ct.App.1947); *In re Estate of Taylor v. United States National Bank*, 248 Or. 538, 436 P.2d 256 (1968); *In re Estate of Moore*, 210 Or. 23, 307 P.2d 483 (1957); *In re Schwarzwalter's Estate*, 47 Wash.2d 119, 286 P.2d 699 (1955); Annot., 65 A.L.R.2d 727 (1959) and other cases cited therein.

Furthermore, the premarital agreement in question does not violate the public policy of this state. The parties to the agreement were mature individuals. There was no suggestion of fraud, overreaching, or a lack of understanding. Full disclosure was made of the nature and extent of the property interests involved. Both parties had substantial separate property which

they desired to preserve for themselves. There were no interests of any minor children to protect. Viewing this agreement in light of these facts and circumstances, as well as the underlying purpose of the transaction, we are of the opinion that neither party would be adversely affected by the premarital agreement.

Mrs. Williams also contends that article XVI, section 52 of the Texas Constitution, in effect, prohibits the premarital agreement now before us. This contention, however, is based on an incorrect interpretation of section 52. While a "surviving" spouse is granted the right to occupy the homestead by section 52, such language is not to be construed as a constitutional prohibition to a waiver of that right by prospective spouses. Therefore, we hold that Mrs. Williams waived her rights to the probate homestead and exempt property by the premarital agreement in question.

The trial court correctly concluded that the agreement was void to the extent that income or other property acquired during marriage should be the separate property of the party who earned or whose property produced such income or acquisition. Such provisions were no more than a mere agreement between the parties to establish the character of the property prior to its acquisition during marriage in violation of both the Texas Constitution and the Family Code, Tex.Const. art. XVI, § 15; Tex.Family Code Ann. § 5.01 (1975); *see Gorman v. Gause*, 56 S.W.2d 855 (Tex.Comm'n App. 1933, jdmt. adopted); *Arnold v. Leonard*, 114 Tex. 535, 273 S.W. 799 (1925); *Hilley v. Hilley*, 161 Tex. 569, 342 S.W.2d 565 (1961). Mrs. Williams contends that the entire agreement is vitiated by these void provisions. On the assumption that the provisions in question constituted part of the consideration for the agreement, she asserts that when a contract is based upon several considerations, one or more of which is ille-

---

**3.** Tex.Family Code Ann. § 5.41 (1975) provides in pertinent part:

"(a) Before marriage, persons intending to marry may enter into a marital property agreement as they may desire.

"(b) The agreement must be in writing and subscribed by all the parties."

.    .    .    .    .

gal, then the entire contract is void. *Edwards County v. Jennings*, 89 Tex. 618, 35 S.W. 1053 (1806); *Patrizi v. McAninch*, 153 Tex. 389, 269 S.W.2d 343 (1954). We disagree.

■ We are of the opinion that the agreement here is controlled instead by the rule that where the consideration for the agreement is valid, an agreement containing more than one promise is not necessarily rendered invalid by the illegality of one of the promises. In such a case, the invalid provisions may be severed and the valid portions of the agreement upheld provided the invalid provision does not constitute the main or essential purpose of the agreement. *See Wicks v. Comves*, 110 Tex. 532, 221 S.W. 938 (1920); *C. C. Slaughter Cattle Co. v. Potter County*, 235 S.W. 295 (Tex.Civ. App.—Amarillo 1921), *aff'd*, 254 S.W. 775 (Tex.Comm'n App.1923, jdmt. adopted); *cf. Smith v. Morton Independent School District*, 85 S.W.2d 853 (Tex.Civ.App.—Amarillo 1935, writ dism'd). *See also* 6A A. Corbin, Contracts § 1521 (1962); J. Calamari & J. Perillo, Contracts § 22–4 (2d ed. 1977); 17 Am.Jur.2d, *Contracts* § 230 (1964). Mutual promises to marry, subsequently performed, provide valid consideration for the premarital agreement in question. The invalid provisions of the agreement are only a part of the many reciprocal promises in the agreement concerning the rights of the parties to the marriage. Moreover, they did not constitute the main or essential purpose of the agreement. Therefore, we hold that the trial court was correct in severing the invalid provisions from the premarital agreement and enforcing the valid provisions regarding Mrs. Williams' waiver of her rights as a surviving spouse to the homestead and other exempt property.

Accordingly, we reverse the judgment of the court of civil appeals and affirm that of the trial court.

Dissenting opinion by CHADICK, J., joined by STEAKLEY and POPE, JJ.

CHADICK, Justice, dissenting.

I respectfully dissent. I would affirm the judgment of the court of civil appeals.

On September 5, 1973, Mildred Disch Lawrence and William Wesley Williams, Sr. executed an antenuptial agreement. Four days later they were married. The antenuptial agreement was evidenced by two separately executed documents which the trial court correctly treated as a single contract. One agreement contained these provisions:

Whereas the parties desire that all property now owned or hereafter acquired by each of them shall, for testamentary disposition, be free from any claim of the other that may arise by reason of their contemplated marriage,

It is therefore agreed:

1. *Property to be separately owned.* After the solemnization of the marriage between the parties, each of them shall separately retain all rights in his or her own property, whether now owned or hereafter acquired, and each of them shall have the absolute and unrestricted right to dispose of such separate property, free from any claim that may be made by the other by reason of their marriage, and with the same effect as if no marriage had been consummated between them.

The supplemental agreement listed the properties that each spouse would bring into the marriage and then provided:

5. All income from the separate estate of each party, including dividends, interest, rents and salaries, and any increases, sales proceeds, reinvestments or changes in said separate estate, shall remain under control of the party receiving the same and shall be deposited in such party's separate account. It is the intent of the parties that such income, except for the personal living expenses hereinabove set forth, shall remain the separate property of each party.

The trial court withdrew the case from the jury and rendered judgment. It declared, as recited in the judgment, that the contract was void insofar as it provided "that income or other property acquired during marriage . . . should be the

separate property of the party who earned or whose property produced such income or acquisition." That, of course, was a correct decision, since the contractual provision violated section 15 of article XVI[1] of the Texas Constitution, as well as section 5.01 of the Texas Family Code.[2] *Hilley v. Hilley,* 161 Tex. 569, 342 S.W.2d 565 (1961); *Gorman v. Gause,* 56 S.W.2d 855 (Tex.Comm'n App.1933, jdmt. adopted); *Arnold v. Leonard,* 114 Tex. 535, 273 S.W. 799 (1925).

The trial court ruled, however, that the part of the agreement which relinquished the constitutional and statutory right to the homestead was valid. It then concluded that the void and valid parts of the single contract were severable and that Mrs. Williams had relinquished her rights to the homestead.

### I.

As shown by the portion of the contract quoted above, the words which purport to make separate property of "all property now owned or hereafter acquired by each of them," were inextricably mixed with the words which are relied upon to effect a waiver of the homestead. The two subjects are inseparably included in the same sentence, and it is only by construction that one can determine that the parties were also contracting about the homestead rights of the survivor. We held in *Land v. Marshall,* 426 S.W.2d 841, 849 (Tex.1968), that an entire trust failed when the voidness of one-half of the trust disrupted the whole scheme and plan for the trust in a manner beyond the trustor's contemplation. The same rule should apply in this case. *Lewis v. Davis,* 145 Tex. 468, 199 S.W.2d 146, 150 (1947). There is, however, a more basic reason that this premarital contract should be held void.

### II.

The protection of a widow from creditors following her husband's death finds its origins in the Spanish law. *Green v. Crow,* 17 Tex. 180, 184 (1856). The Third Congress of the Republic enacted the Exemption Act of 1839,[3] 2 H. Gammel, Laws of Texas 125

1. § 15. Separate and community property of husband and wife

   All property, both real and personal, of the wife, owned or claimed by her before marriage, and that acquired afterward by gift, devise or descent, shall be the separate property of the wife; and laws shall be passed more clearly defining the rights of the wife, in relation as well to her separate property as that held in common with her husband . . .

2. Section 5.01. Marital Property Characterized

   (a) A spouse's separate property consists of:
   (1) the property owned or claimed by the spouse before marriage;
   (2) the property acquired by the spouse during marriage by gift, devise, or descent; and
   (3) the recovery for personal injuries sustained by the spouse during marriage, except any recovery for loss of earning capacity during marriage.
   (b) Community property consists of the property, other than separate property, acquired by either spouse during marriage.

3.

AN ACT

Entitled an act to exempt certain
property therein named
from execution.

Sec. 1. Be it enacted by the Senate and House of Representatives of the Republic of Texas in Congress assembled, That from and after the passage of this act, there shall be reserved to every citizen or head of a family in this Republic, free and independent of the power of a writ of fire facias, or other execution issuing from any court of competent jurisdiction whatever, fifty acres of land or one town lot, including his or her homestead, and improvements not exceeding five hundred dollars in value, all house hold and kitchen furniture, (provided it does not exceed in value two hundred dollars, all implements of husbandry,) (provided they shall not exceed fifty dollars in value,) all tools, apparatus and books belonging to the trade or profession of any citizen, five milch cows, one yoke of work oxen or one horse, twenty hogs, and one year's provisions; and that all laws and parts of laws contravening or opposing the provisions of this act, be and the same are hereby repealed: Provided, The passage of this act shall not interfere with contracts between parties heretofore made.

JOHN M. HANSFORD,
Speaker of the House of Representatives.
DAVID G. BURNET,
President of the Senate.
Approved, January 26, 1839.
MIRABEAU B. LAMAR.

(1898); Hartley's Digest of the Laws of Texas, art. 1270, at 405–06 (1850), and the Seventh Congress in 1843 amended the probate law by requiring the judge of the probate court to set apart the exempt real and personal property in the husband's estate "for the sole use and benefit of the widow and children of the deceased." 2 H. Gammel, Laws of Texas 834 (1898). When the Republic joined the United States, Texas became the first state to incorporate into its fundamental law a provision protecting the homestead rights of the family. W. Nunn, Texas Homestead and Other Exemptions, § 3 (1931); Cole, *The Homestead Law in Texas,* 3 Texas L.Rev. 217, 233 n. 74 (1925).

The first constitution of the State of Texas defined the homestead, freed it from forced sale, and then said "nor shall the owner, if a married man, be at liberty to alienate the same, unless by the consent of the wife, in such manner as the legislature may hereafter point out."[4] 2 H. Gammel, Laws of Texas 1294 (1898). The first legislature responded in 1846 by enacting section 26 of the 1846 Probate Act which

> set apart for the sole use and benefit of the widow and children, if there be either or any, of the deceased, all such property as by the Constitution and law of the State, has been or shall be declared not to be subject to forced sale . . . . 1846 Tex.Gen.Laws, An Act To Organize Probate Courts, § 26, at 317–18; 2 H. Gammel, Laws of Texas 1623–24 (1898).

That section also provided that when the estate contained none of the exempted "specific articles," the probate judge was empowered to conduct a sale of the deceased's property to procure them.

The Constitutions of 1861, 1866, and 1869 contained provisions which protected the homestead. W. Nunn, Texas Homestead and Other Exemptions, § 4 (1931). Our present Constitution of 1876 enlarged the homestead exemption beyond those of the earlier constitutions and extended its benefits to "unmarried adults, male and female." The constitutional protection of the

right has, since 1876, been embodied in sections 50–52 of article XVI of the Constitution. The homestead right of the surviving spouse and children is found in section 52 in these words:

> On the death of the husband or wife, or both, the homestead shall descend and vest in like manner as other real property of the deceased, and shall be governed by the same laws of descent and distribution, but it shall not be partitioned among the heirs of the deceased during the lifetime of the surviving husband or wife, or so long as the survivor may elect to use or occupy the same as a homestead, or so long as the guardian of the minor children of the deceased may be permitted, under the order of the proper court having the jurisdiction, to use and occupy the same.

Strong and sound policies have supported and enforced the homestead right from the earliest times in Texas. As stated by Chief Justice Hemphill, the object of the homestead law was

> to confer on the beneficiary a home as an asylum, a refuge which cannot be invaded nor its tranquility or serenity disturbed, and in which may be nurtured and cherished those feelings of individual independence which lie at the foundation and are essential to the permanency of our institutions. As a measure of sound policy, it cannot be too highly commended . . . . *Wood v. Wheeler,* 7 Tex. 13, 22 (1851).

Justice Lipscomb in *Trawick v. Harris,* 8 Tex. 312, 314–15 (1852), stressed the soundness of the policy for the homestead protection.

> That the interest and protection of the wife entered largely into the consideration that induced the provision in our Constitution protecting the homestead there cannot be the smallest doubt; that she should have an asylum from which the creditor by the process of the law could not force her and her children, and rudely drive them from a home sanctified

4. Tex.Const. art. VII, § 22 (1845).

by so many sweet and endearing recollections, to become homeless and houseless wanderers, to be exposed not only to physical suffering but also to the more baneful and blighting influences so often and so successfully brought to bear on the unfortunate, when necessity and not the will consents to infamy. Protect the home of the wife, and the opportunity is in some measure afforded her by frugality and honest industry to support herself and children, and to prevent some of the worst calamities that the profligacy of the husband would bring on them. These were doubtless some of the considerations that influenced the framers of our Constitution in ingrafting the homestead protection as a cardinal law of the land.

The homestead laws are designed to protect the stability and welfare of the state. *Andrews v. Security Nat'l Bank,* 121 Tex. 409, 50 S.W.2d 253, 256 (1932); *Black v. Rockmore,* 50 Tex. 88, 96 (1878); 2 G. Thompson, Real Property, § 970 (2d ed. 1939). By protecting citizens against being driven from their homes, there is some measure of protection against their becoming dependent on the state for housing. Moreover, the protection of the home is intended to encourage citizens to contribute as productive members of society. Tex. Const.Ann. art. XVI, § 50, comment (Vernon 1955); W. Nunn, Texas Homestead and Other Exemptions, § 2 (1931); 2 G. Thompson, Real Property, § 1970 (2d ed. 1939). The Constitution's protection of the family has been expanded by a judicial history of liberal construction which effectuates the homestead law's beneficial purpose, "in accord with the humane principles and wise governmental policy upon which all homestead laws rest." *Woods v. Alvarado State Bank,* 118 Tex. 586, 19 S.W.2d 35, 38 (1929). The homestead law "is entitled to the most liberal construction for the accomplishment of its objects." *Trawick v. Harris,* 8 Tex. 312, 316 (1852). *See also Andrews v. Security Nat'l Bank,* 121 Tex. 409, 50 S.W.2d 253, 256 (1932); *Hall v. Fields,* 81 Tex. 553, 17 S.W. 82 (1891); *Blum v. Gaines,* 57 Tex. 119, 121 (1882); *Black v. Rockmore,* 50 Tex. 88, 96 (1878); *Allison v. Brookshire,* 38 Tex.

199, 201 (1873); *Reconstruction Finance Corp. v. Burgess,* 155 S.W.2d 977, 980 (Tex. Civ.App.—Waco 1941, writ ref'd); *Panhandle Constr. Co. v. Head,* 134 S.W.2d 779, 781 (Tex.Civ.App.—Amarillo 1939, writ ref'd).

The answer to our problem, while found in the history and the purposes of the homestead, is apparent in the Constitution itself. Article XVI, section 52, of the Texas Constitution states that upon the death of the husband or wife, or both, the homestead descends and vests as other real property, but then adds a positive prohibition about partitioning under the circumstances of this case. These are the words of the Constitution, which control our decision:

> but it [the homestead] shall not be partitioned among the heirs of the deceased during the lifetime of the surviving husband or wife, or so long as the survivor may elect to use or occupy the same as a homestead, or so long as the guardian of the minor children of the deceased may be permitted, under the order of the proper court having the jurisdiction, to use and occupy the same.

It may be argued that, there being no children born of this marriage, effect should be given the antenuptial agreement. In fact, some jurisdictions make the distinction and permit an antenuptial agreement to forego homestead if there are no children. *See, e. g., Zachman v. Zachman,* 201 Ill. 380, 66 N.E. 256 (1903). Those cases do not arise under a direct constitutional prohibition as we have in Texas. The Texas Constitution directly addresses both the situation in which there are children and the situation in which there are none. It treats the two identically, and specifically prohibits a partition in each instance. To permit the relinquishment in this instance should logically compel the same result when the survivor has children at home. It is the clarity of the constitutional provision, no doubt, which explains why this problem has not previously been presented to a Texas court.

Some states have considered whether a premarital agreement may operate to de-

feat a homestead, and there is a conflict between their decisions. The agreements have been held void in Arkansas, Kansas, North Dakota and Vermont. *Burnes v. Burnes,* 203 Ark. 334, 157 S.W.2d 24 (1941); *In re Neis' Estate,* 170 Kan. 254, 225 P.2d 110 (1950); *In re Place's Estate,* 166 Kan. 528, 203 P.2d 132 (1949); *In re Garden's Estate,* 158 Kan. 554, 148 P.2d 745 (1944); *Boulls v. Boulls,* 137 Kan. 880, 22 P.2d 465 (1933); *Watson v. Watson,* 106 Kan. 693, 189 P. 949 (1920); *Swingle v. Swingle,* 36 N.D. 611, 162 N.W. 912 (1917); *Mann v. Mann's Estate,* 53 Vt. 48 (1880).

Other jurisdictions, including Arizona, Illinois, Iowa, Minnesota, and Oregon, have given effect to the antenuptial agreements. *Smith v. Tang,* 100 Ariz. 196, 412 P.2d 697 (1966); *McMinimee v. McMinimee,* 238 Iowa 1286, 30 N.W.2d 106 (1947); *Finn v. Grant,* 224 Iowa 527, 278 N.W. 225 (1938); *In re Devoe's Estate,* 113 Iowa 4, 84 N.W. 923 (1901); *Peet v. Peet,* 81 Iowa 172, 46 N.W. 1051 (1890); *Appleby v. Appleby,* 100 Minn. 408, 111 N.W. 305, 117 Am.St.Rep. 709 (1907); *In re Moore's Estate,* 210 Or. 23, 307 P.2d 483, *mandate recalled,* 210 Or. 44, 308 P.2d 180 (1957).

When the Texas Constitution addresses a problem, as it has in the case of survivor's right to a homestead, precedents from other jurisdictions become immaterial and unpersuasive. But of the jurisdictions considering the question of validity, apparently only the Kansas courts contended with a similar constitutional homestead provision. Kan. Const. art. XV, § 9. It has been held in Kansas that the probate homestead rights provided by the Kansas Constitution, Kan. Const. art. XV, § 9, and statute, Kan.Prob. Code Ann. § 59–401, are for the protection of the family. Those rights cannot be varied or avoided by an antenuptial contract which provides that, should the wife survive the husband, she is to have no part in his estate. *In re Neis' Estate,* 170 Kan. 254,

225 P.2d 110, 117–18 (1950); *In re Garden's Estate,* 158 Kan. 554, 148 P.2d 745, 753–54 (1944); *Boulls v. Boulls,* 137 Kan. 880, 22 P.2d 465, 467 (1933). The policy considered by the Kansas courts in holding void any antenuptial agreements to waive the probate homestead is consistent with the approach that Texas has taken on the protection of homestead rights. The constitutional basis for voiding such agreements is stronger in Texas because the probate homestead provision, Tex.Const. art. XVI, § 52, specifically defines the right.

### III.

Despite the constitutional protection that Texas has historically given the probate homestead, the majority holds that the right may be waived by antenuptial agreement. Even if that is true, nowhere in the present antenuptial agreement is the homestead right expressly mentioned or specifically waived. The agreement contains only the general language that each spouse's separate property shall be "free from any claim" by the other spouse that may arise as a result of the marriage. It must be in this general language, if at all, that the majority finds waiver of the homestead right.

It has been held that "contracts of the wife in restraint of her right to the homestead, made either in contemplation of marriage or after marriage, should be closely scrutinized." *McCormick v. McNeel,* 53 Tex. 15, 20 (1880).[5] Because of the importance of the homestead right and the public policy that creates its agreements to abridge the right, if upheld, should be done so only if, after close examination, it is determined that the waiver is clear and explicit. "The right to a widow's . . . probate homestead cannot be waived by an ante-nuptial agreement not clear and explicit as to what rights were being waived."

---

5. In *McCormick* the widow elected to recover on a promissory note executed in consideration for an antenuptial deed relinquishing her homestead right and not to recover the homestead itself. The Court concluded that since the widow voluntarily elected to recover on the note at the trial, it would not interfere on her behalf to protect her homestead right.

*Smith v. Tang,* 100 Ariz. 196, 412 P.2d 697, 704 (1966). The constitutionally protected home of a widow should not be taken away because of a generally worded antenuptial waiver. Moreover, contrary to the recitation in the majority opinion, there is nothing in this summary judgment record which shows that Mrs. Williams had full knowledge of the homestead right alleged to have been waived.

The antenuptial agreement in the present case fails to adequately identify the probate homestead or to clearly show that Mrs. Williams was waiving her right to it. Waiver should not be enforced against her.

I would affirm the judgment of the court of civil appeals.

STEAKLEY and POPE, JJ., join in this dissent.